626 P.2d 1312

STATE of New Mexico, Plaintiff-Appellee,

v.

Marvin BROWN and Melvin Brown, Defendants-Appellants.

Nos. 4679, 4680.

Court of Appeals of New Mexico.

March 12, 1981.

John B. Bigelow, Chief Public Defender, Martha A. Daly, Appellate Defender, Santa Fe, for defendants-appellants.

Jeff Bingaman, Atty. Gen., Michael E. Sanchez, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

The Supreme Court remanded N.M.App., 623 P.2d 574 these two decisions for us to reconsider in light of its decision in *State v. Jones*, 96 N.M. 14, 627 P.2d 409, 1981. We have done so and find no reason to change our prior decision.

We read the Supreme Court's decision in *Jones* to disagree with us specifically in the analysis of corroboration of the informant's statements. Comparing the *Jones* decision to *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), we understand our Supreme Court to say that the unique information about the *modus operandi* of the burglaries was sufficient infor-

mation to establish the reliability of the informant. The unique information about the "MO" of the burglaries, at the time when such information was not public, is comparable to the information supplied in *Draper* by the "special employee" Hereford, who had always been found to be accurate and reliable by Narcotic Agent Marsh. Thus, as the United States Supreme Court held in *Draper*, after Agent Marsh had received the information from "special employee" Hereford, "it is clear that Marsh would have been derelict in his duties had he not pursued it."

The *Draper* court reasoned that because Hereford had given detailed descriptions of the suspect, even describing the way he walked, an arrest by the agents when they observed the individual fitting the description and walking as he did was proper:

And when, in pursuing that information, he [Marsh] saw a man, having the exact physical attributes and wearing the precise clothing and carrying the tan zipper bag that Hereford had described, alight from one of the very trains from the very place stated by Hereford and start to walk at a "fast" pace toward the station exit, Marsh had personally verified every facet of the information given him by Hereford except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with every other bit of Hereford's information being thus personally verified, Marsh had "reasonable grounds" to believe that the remaining unverified bit of Hereford's information—that Draper would have the heroin with him—was likewise true.

We understand the reasoning in *Jones* to be an exact parallel to this discussion in *Draper*:

Furthermore, Jones matched the description given by the informant and drove the car and lived in the apartment named by the informant. It was therefore reasonable for the officers to believe that the other information supplied by the informant was true.

In our reconsideration of the instant cases, however, we do not find the comparable uniqueness of facts or any other indicia of reliability of the informants. The affidavit for both search warrants was identical:

> Affiants are full time salaried commisioned [sic] police officers with the Albuquerque Police Department with a total of 13 years law enforcement experience. Affiants are currently assigned to the Property Crimes Section were [sic] they maintain certain expertise in the investigation of theft related crimes and the concealing and disposing of stolen property. In this capacity Affiants investigated a Commercial Burglary which occurred at the Alb. Tennis Complex, 1903 Stadium SE, on July 26, 1979, APD Report # 79-45193, in which approximately $6,500.00 worth of various tennis equipment was stolen. On August 16, 1979, Affiants were contacted by a confidential informant, who was found to be in possession of a tennis racket that had been taken in this burglary, and the confidential informant advised that he learned that this burglary had been committed by Marvin and Melvin Brown. This confidential informant wishes to remain anonymous for reasons of personal safety, however, he is deemed reliable in that he is a member in good standing in the community[,] has no arrest record in the community, is not presently under indictment nor working off any criminal charges. On August 20, 1979, the burglary at the Albuquerque Tennis Complex was presented throughout the news media as the Crimestopper "Crime of the week". On August 21, 1979, Affiants received a crimestopper tip which informed that a cheerleading squad for a football team at the John Marshall Community Center at 1500 Walter SE, had been outfitted with white socks, which match "John Newcombe" socks which were taken in the burglary at the Albuquerque Tennis Complex. The crimestopper informant further advised that these socks were supplied to the cheer-

leaders by Marvin and Melvin Brown. On August 22, 1979, Affiants received information from another crimestopper informant ( # 1893) who advised that Marvin and Melvin Brown have been seen selling tennis equipment and have a large quantity of tennis equipment, that was stolen in the burglary of the Albuquerque Tennis Complex, in the rear bedroom of their residence which is located at 1607 Edith SE.

> Based on the above facts, affiants respectfully pray that this search warrant be granted under the auspices of the District Court, State of New Mexico, County of Bernalillo.

▮ Nothing in *Jones* suggests that our Supreme Court will tolerate anything less than some underlying circumstances from which one may conclude that the informant is credible or that the information he supplied is reliable. In these cases the officers affirmed that the tennis complex was burglarized on July 26, 1979. There was no mention that this burglary was unknown comparable to the uniqueness of the "MO" of the burglaries of the pharmacies in *Jones*. Secondly, the officers related that on August 20 the news media carried the burglary of the tennis complex as a "Crimestopper" crime of the week. They mentioned that prior to August 20, Informant No. 1 was found in possession of a tennis racket that had been taken in the burglary. They affirmed that this informant advised that he had "learned" that the burglary had been committed by the two defendants. The officers added that the confidential informant wished to remain anonymous for safety reasons, but that he was deemed reliable "in that he is a member in good standing in the community[,] has no arrest record in the community, is not presently under indictment nor working off any criminal charges."

Analyzing the information supplied by Informant No. 1, we note first that he did not speak of personal knowledge. Second, the reasons the officers gave for believing

that he was reliable do not meet the traditional test of indicia of reliability. New Mexico Rule of Criminal Procedure 17(f), N.M.S.A. 1978, requires that when hearsay is used in a search warrant that there be "a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." Under the facts recited in the affidavit, we do not have any of the uniqueness upon which our Supreme Court relied in *Jones.* We observe further that Informant No. 1 did not tell the officers that he had received the racket from the defendants. He merely "advised that he learned that this burglary had been committed" by the defendants. As in *State v. Duran,* 90 N.M. 741, 568 P.2d 267 (Ct.App. 1977), this information might have been mere casual rumor circulating in the underworld.

There were no underlying circumstances which indicated reliability with respect to Informant No. 2, who called up on August 21 regarding the socks. Further, the affidavit recited no attempt to corroborate whether in fact the cheerleaders had received socks from anyone. Thus, we do not see that this second informant's information satisfied any of the corroboration which our Supreme Court found critical in *Jones.*

Likewise, the third informant, who called on August 22, did not meet the unique information requirement of *Jones.* Perhaps he spoke from firsthand observation regarding the selling of the tennis ·equipment. However, there were no underlying circumstances which suggest that his information was reliable or that he was credible. The

two-prong test of *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), was not met. Those requirements were recently reaffirmed by the United States Supreme Court in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

▓ Finally, the aggregate of bits of information from the three informants, each of which does not contain within itself any indicia of credibility of the informant or reliability of the information, does not add up to a showing of probable cause. *Spinelli* holds that an aggregate of discrete bits of information, each of which is defective, does not add up to the establishment of probable cause.

Thus, having reconsidered these decisions in light of *Jones,* we find no reason to change the decision.

Reversed.

IT IS SO ORDERED.

LOPEZ and WALTERS, JJ., concur.