THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MICHAEL STEVENS, Defendant-Appellant.

First District (1st Division)    No. 80-221

Opinion filed July 13, 1981.

James J. Doherty, Public Defender, of Chicago (Timothy K. McMorrow, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Adrienne Noble Nacev, and Gino P. Naughton, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Michael Stevens (defendant) was found guilty of murder and attempt armed robbery. He was sentenced respectively to 20 to 35 years and 6 to 20 years concurrently. He appeals.

In this court, defendant questions whether his guilt on the theory of accountability was proved beyond a reasonable doubt, the validity of his arrest and the voluntary character of his written confession.

## I

A summary of the facts is required. The deceased, Donald Sucilla, was driving a CTA bus on the evening of December 21, 1977. Joyce Graves was a passenger. She sat on the first seat facing forward across from the driver. Two young men, whom she identified as defendant and Marlon Shannon, approached the driver. Defendant said something to Graves which she did not hear. Shannon pointed a gun at her and said, "Give him your purse." She gave her purse to the defendant. He sat down beside her. Shannon demanded the driver's wallet. He refused and Shannon shot him. Shannon and defendant fled.

A woman named Connie Fluker testified that on the same evening Shannon and a taller man, whom she could not identify, approached her and robbed her at gunpoint. Shannon held the gun.

It appears from defendant's written confession he met Shannon some 4 weeks before the shooting. On December 21, 1977, defendant took his father's revolver from the house. He showed Shannon the gun. Shannon told defendant they would go out and make some money. They went

together and robbed a woman on Lowe Street. This was Connie Fluker. They boarded the bus and decided to rob a woman passenger. Shannon pointed the gun at her and defendant took her purse. Shannon demanded the driver's wallet. The driver refused and Shannon shot him. Defendant and Shannon fled to the home of Shannon's girlfriend. Later that evening, defendant went home and put the gun away.

In due course the police obtained possession of the gun from defendant's home. Ballistics evidence showed the fatal bullet came from the gun in question.

Defendant takes the position that since Shannon actually fired the fatal shot, defendant can be found guilty only if the evidence shows he was legally accountable. The People attempt to justify the conviction not only on the theory of accountability but also on the theory of felony murder.

The statute on felony murder (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(3)) provides:

> "(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:
>
> ❋ ❋ ❋
>
> (3) He is attempting or committing a forcible felony other than voluntary manslaughter."

The statute on accountability (Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c)) provides:

> "A person is legally accountable for the conduct of another when:
>
> ❋ ❋ ❋
>
> "(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

■■ Under either of these theories the identity of the person who held the gun in the attempt armed robbery and murder of the bus driver is legally immaterial. This has been the unquestioned law of the State of Illinois for many years. In *People v. Johnson* (1973), 55 Ill. 2d 62, 67, 302 N.E.2d 20, the supreme court quoted from *People v. Weber* (1948), 401 Ill. 584, 604, 83 N.E.2d 297, *cert. denied* (1949), 336 U.S. 969, 93 L. Ed. 1120, 69 S. Ct. 930, and added additional citations to this statement:

> "Where murder is committed during a robbery, all participants in the robbery are deemed equally guilty of murder and it is immaterial who fired the fatal shot."

■■■ On the issue of accountability, it is correct that mere presence at the scene of the crime or negative acquiescence in action by others is insufficient to establish accountability but active participation in the overt act

is not required. (*People v. Dandridge* (1979), 79 Ill. App. 3d 693, 695, 398 N.E.2d 955.) In addition, it has been held that where defendant has aided and abetted or attempted to aid and abet in the perpetration of a crime, that is sufficient to prove accountability. (*People v. Tyler* (1979), 78 Ill. 2d 193, 196, 399 N.E.2d 975.) Furthermore, accountability and the presence of a common design may be proved by circumstantial evidence. *People v. Tate* (1976), 63 Ill. 2d 105, 109, 345 N.E.2d 480.

Thus, although it is correct that mere presence of a defendant at the commission of the crime is not sufficient in and of itself to prove accountability, since guilt by accountability may be proved by circumstantial evidence, the presence of the defendant at commission of the crime "without disapproving or opposing it, is evidence which, together with all other circumstances, may present a jury issue as to his responsibility." *People v. Morgan* (1977), 67 Ill. 2d 1, 10, 364 N.E.2d 56, *cert. denied* (1977), 434 U.S. 927, 54 L. Ed. 2d 287, 98 S. Ct. 411.

■■ Applying these principles to the record before us, the following facts prove defendant guilty of attempt armed robbery and murder on the theory of accountability beyond any reasonable doubt:

(1) Defendant brought the gun to the pool hall and showed it to Shannon. Defendant testified Shannon "grabbed it out of my hand." But defendant never requested return of the gun at that time. Also, as defendant admitted to assistant State's Attorney Goldstein, defendant and Shannon also robbed another woman on the street prior to the Fluker robbery. At that time defendant himself had possession of the gun. Defendant and Shannon took over $100 from this victim and divided it between themselves.

(2) When Shannon initially told defendant they were going to make some money, obviously with the gun, defendant acquiesced.

(3) When defendant and Shannon saw Connie Fluker, Shannon said they should "get her" and defendant responded affirmatively.

(4) Defendant did nothing to disassociate himself from the Fluker robbery and the subsequent robberies although he knew he was a participant in armed robbery.

(5) On the bus, defendant demanded the purse from Joyce Graves and actually took it from her possession.

(6) After the bus driver was shot, defendant fled with Shannon to the home of Shannon's girlfriend. Defendant stated in his written confession, "as soon as I was going to walk out the door" he heard the shot fired by Shannon. But in defendant's confession he stated also when he heard the shot, "I was out the door. I was starting to run." He also testified, "I started walking to try and get off the bus, and a shot was fired."

(7) Additional facts demonstrate defendant's credibility does not withstand scrutiny. Attorney Goldstein testified defendant admitted he

had lied when he denied to Goldstein that he had participated in the robbery of the third victim after the Fluker incident and before defendant and Shannon boarded the bus. Defendant also admitted he deceived his father. He did this by taking the gun from home initially. Then he returned the gun and replaced the expended shells. He admitted he did this, "So my father wouldn't know that his gun was used."

■■ The murder here was committed during the course of the attempted robbery of the bus driver. Defendant was thus guilty of felony murder. *People v. Johnson* (1973), 55 Ill. 2d 62.

We find the defendant guilty as charged on the theories of accountability and felony murder beyond any reasonable doubt to an overwhelming degree.

II

On the legality of arrest, police officer Dio Guardi testified he was told by a man named Ronnie Curtis that defendant told Curtis he (defendant) and a man named Tony had been the ones who had recently shot and killed a bus driver. The officer took Curtis before a judge and obtained a search warrant. Curtis used the name "L. Johnson" so that defendant would not know who gave the police the information.

The police went to defendant's home and spoke to his mother. The officer told her that her husband's gun had possibly been used in a shooting. Defendant's mother showed him where the gun was kept. She gave him the weapon. Defendant was then arrested and brought to the police station.

On hearing of the motion, the trial judge sustained objection to questioning by defendant of Dio Guardi and Curtis (Johnson) on the fact that Curtis expected to receive a $2000 reward in return for his information.

■■ The problem here is the issue of probable cause for the arrest. In *People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356, the supreme court held:

> "There is probable cause when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. [Citation.] This court observed in *People v. Jones*, 31 Ill. 2d 42, 47, that '* * * reasonable cause means something less than evidence which would result in a conviction, and it is also established that reasonable cause may be founded upon evidence that would not be admissible at trial.'"

■■ Applying this principle to the case before us, the officer knew the crimes of murder and attempt armed robbery had been committed. After his conversation with the informant, assuming a legally reliable informant,

the officer had a reasonable belief that the defendant had committed these offenses. This belief was strengthened by the officer's conversation with the defendant's mother and her delivery of the weapon to him. The decisive factor then is the reliability of the informer.

A situation of this type differs radically from one involving statements made by an informer who is paid directly by the police. Curtis here should, in our opinion, be regarded not as a paid or professional informer but as an ordinary citizen who came forward to inform the police of knowledge which he had. This distinction has been made in a number of cases. (See *People v. Hoffman* (1970), 45 Ill. 2d 221, 226, 258 N.E.2d 326, *cert. denied* (1970), 400 U.S. 904, 27 L. Ed. 2d 141, 91 S. Ct. 142; *People v. Hester* (1968), 39 Ill. 2d 489, 514, 237 N.E.2d 466; *People v. Beto* (1980), 86 Ill. App. 3d 622, 628, 408 N.E.2d 293; *People v. Miller* (1975), 36 Ill. App. 3d 542, 546, 345 N.E.2d 1; and *People v. Lawson* (1976), 36 Ill. App. 3d 767, 770, 345 N.E.2d 41.) These cases point out the radical difference between a paid informer who generally receives money from the police in immediate exchange for his information and an ordinary citizen.

Defendant urges that because Curtis (Johnson) was eligible for a reward for the arrest and conviction of the guilty person he should be classified as a paid informer. We disagree. The obvious and irrefutable distinction is the fact that the paid informer receives his money immediately upon his communication to the authorities. On the contrary, a reward recipient does not receive the stipulated monetary reward until after the validity and truth of his evidence have been tested and established through the judicial process. There is a guarantee of establishment of the truth before payment is made.

We addressed this issue in *People v. Beto* (1980), 86 Ill. App. 3d 622, 628. There, we held an informant qualified as a citizen informant even though she expected a reward for her information.

We conclude the trial court correctly found there was probable cause for the arrest of defendant.

### III

After defendant's arrest, he was given proper *Miranda* warnings. In due course defendant made a complete oral confession to the police and also signed a complete written confession. In a pretrial motion, defendant raised the issue of the voluntary nature of these confessions.

Police Sergeant James Stevens, defendant's father, testified he visited his son in police custody. He told Michael to tell the police everything he knew and it would be "easier on him" if he told the truth. He told this to his son six or seven times. He told Michael that if he cooperated "maybe the State might be a little easier on him, there were no promises made."

Officer Dio Guardi, who had arrested defendant, testified he told

defendant's father defendant had admitted his involvement in the case. He testified he did not ask Officer Stevens to attempt to get information. He heard Officer Stevens tell defendant to "tell them the truth."

Assistant State's Attorney Goldstein took an oral and a written statement from defendant. Sergeant Stevens was present during this time. The attorney heard the Sergeant tell the defendant to "tell the truth" but did not hear any statement by the Sergeant about things going easier for defendant if he made a statement.

Curtis (Johnson), the informant, also testified he spoke to the defendant regarding the shooting of a bus driver. This conversation took place December 26, 1977. The homicide occurred on December 21, 1977.

Defendant's mother testified the police came to her home to arrest the defendant. Officer Dio Guardi asked her if there was a gun in the house. She produced the gun. She heard her husband tell the defendant to tell the police what he knew but she heard no promise of leniency. Defendant testified his father told him to tell the truth and "it would go easy on me in the long run if I gave a statement." The defendant believed this statement by his father was true. The trial court denied the motion to suppress the confessions.

Defendant urges his confessions were obtained by promises of leniency so they were in effect involuntary and should have been suppressed. We disagree.

■■ In *People v. Luckett* (1977), 48 Ill. App. 3d 536, 362 N.E.2d 1297, *appeal denied* (1977), 66 Ill. 2d 634, we considered a similar claim of nonphysical coercion. The evidence there showed that defendant, an officer from the Illinois Bureau of Investigation, wished to avoid confinement in the county jail. Certain of the officers who had defendant in custody told him they would request the court to fix a cash bond. Under the circumstances in that case, we held the trial court properly denied defendant's motion to suppress his statement. The legal background of the situation there is applicable to the instant case (48 Ill. App. 3d 536, 541-42):

> "The constitutional protection of every citizen against official interrogation by physical coercion or by more subtle means is of prime and urgent importance. The defendant's claim that his confession was involuntary thus raises a serious issue which requires most careful consideration. We are obliged to decide this question upon the basis of 'the totality of the circumstances.' (*People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601, *cert. denied*, 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) We are mandated to give consideration to ' "both the characteristics of the accused and the details of the interrogation." ' *People v. Simmons* (1975), 60 Ill. 2d 173, 179, 326 N.E.2d 383, quoting *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 226, 36 L. Ed. 2d 854, 93 S. Ct. 2041.

In the type of pretrial hearing before us, '[t]he burden of going forward with the evidence and the burden of proving that a confession was voluntary * * *' rests upon the State. (Ill. Rev. Stat. 1975, ch. 38, par. 114—11(d). See also *People v. McClure* (1976), 43 Ill. App. 3d 1059, 1061, 358 N.E.2d 23, citing *Lego v. Twomey* (1972), 404 U.S. 477, 30 L. Ed. 2d 618, 92 S. Ct. 619.) However, in deciding the issue regarding the voluntary nature of a confession, 'the trial court need not be convinced beyond a reasonble doubt, and the finding of the trial court that the statement was voluntary will not be disturbed unless it is contrary to the manifest weight of the evidence.' (*Prim*, 53 Ill. 2d 62, 70. See also *People v. Pittman* (1973), 55 Ill. 2d 39, 52, 302 N.E.2d 7.) The quantum of proof required of the State has been aptly termed 'one of persuasion and not beyond a reasonable doubt.' Ill. Ann. Stat., ch. 38, par. 114—11, Committee Comments, at 215 (Smith-Hurd 1970)."

■■ In the instant case, it seems to us a great part of the evidence here consists of a suggestion to defendant that he tell the truth. Defendant's father, Sergeant Stevens, testified he urged defendant to tell the truth. In *People v. Wipfler* (1977), 68 Ill. 2d 158, 173, 368 N.E.2d 870, the supreme court held:

"Decisions of this court have firmly established that, in the absence of a suggestion of benefit to the defendant, mere exhortation to tell the truth does not render inadmissible a subsequent confession."

*Wipfler* was followed in this regard by *People v. Dozier* (1979), 67 Ill. App. 3d 611, 615, 385 N.E.2d 155. In *Wipfler*, the supreme court also considered "whether an exception should be made to this rule in instances when the urging of honesty comes from one who is trusted by defendant." (68 Ill. 2d 158, 173.) The court then pointed out that the chief of police who had interrogated the defendant had "been a sort of father image to defendant since the death of defendant's father." (68 Ill. 2d 158, 164.) The court held that "this close relationship between Johnson [the chief of police] and the defendant coupled with the admonition to tell the truth do not *per se* render the subsequent confession involuntary." 68 Ill. 2d 158, 174.

In the instant case, we have an additional element resulting from the fact defendant's father told him it would be "easier on" defendant if he told the truth. This raises for decision the factual issue as to whether "considering the totality of the attendant circumstances, defendant's will was overcome at the time he confessed." (*People v. Noe* (1980), 86 Ill. App. 3d 762, 765, 408 N.E.2d 483.) The trial court saw and heard the witnesses. We cannot say the conclusion he reached is contrary to the manifest weight of the evidence.

■■ In addition, as a matter of law, it seems to us the statement made by defendant's father that it would be "easier on him" if he told the truth

should not be construed as a direct promise of leniency. Language of this type is best classified as "a mere suggestion of the advisability of making a statement" which "does not in itself render a confession involuntary." (*People v. Hartgraves* (1964), 31 Ill. 2d 375, 381, 202 N.E.2d 33, *cert. denied* (1965), 380 U.S. 961, 14 L. Ed. 2d 152, 85 S. Ct. 1104.) The defendant in the instant case appears to be a young person with a good degree of intelligence. He was shortly under 19 years of age at the time and had completed 1½ years of high school. We conclude denial by the trial judge of the motion to suppress was factually and legally proper.

The cases cited by defendant in this regard do not assist him. In *People v. Koesterer* (1976), 44 Ill. App. 3d 468, 358 N.E.2d 295, *appeal denied* (1977), 65 Ill. 2d 583, defendant was a habitual user of controlled substances. There was evidence she had used drugs shortly before her arrest. Both of her parents and the police urged her to make a confession because the State's Attorney had agreed not to oppose her freedom on a recognizance bond. In addition, as the court there pointed out, the trial judge failed to determine the possible influence of drugs upon the defendant. 44 Ill. App. 3d 468, 479.

In *People v. Ruegger* (1975), 32 Ill. App. 3d 765, 336 N.E.2d 50, the police promised defendant if he confessed to everything he would only be charged with some of the offenses and they would help him obtain release on a recognizance bond. Defendant was 18 years old. A captain in the police department, defendant's uncle, assisted in the interrogation. Defendant testified police officers told him "they would 'go to bat' for him on such matters as a recognizance bond and probation if he confessed to everything." (32 Ill. App. 3d 765, 771.) This court expressly held the ruling of the trial court that the confession should be suppressed was not contrary to the manifest weight of the evidence.

For these reasons the judgments appealed from are affirmed.

Judgments affirmed.

CAMPBELL, P. J., and O'CONNOR, J., concur.