STATE of Missouri, Plaintiff–Respondent,

v.

Sharon Annette BEATTY, Defendant–Appellant.

No. 15862.

Missouri Court of Appeals, Southern District, Division One.

April 5, 1989.

Motion for Rehearing or to Transfer to Supreme Court Denied May 3, 1989.

Application to Transfer Denied June 13, 1989.

---

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Anne E. Hall, Public Defender, Springfield, for defendant-appellant.

GREENE, Judge.

Defendant, Sharon Beatty, was charged in a two-count information with the crimes of first degree robbery and armed criminal action. A jury returned a verdict of guilty on both counts, and Beatty was given a ten-year sentence on the robbery conviction, and a three-year sentence on the arm-

ed criminal action conviction with the sentences to run concurrently.

On appeal Beatty relies on three points of alleged trial court error, the first of which is that the trial court erred in admitting into evidence testimony regarding statements she made to police officers concerning the robbery, and evidence seized by officers from her apartment because the information the police received linking Beatty with the crime had come from her psychiatrist in violation of Beatty's right that statements she made to the doctor be kept confidential.

The point is an interesting one, and is a matter of first impression in Missouri. A brief outline of the facts is as follows. In the fall of 1987, Sharon Beatty shared an apartment at 722 South Jefferson, Springfield, Missouri, with a female companion, Glenda Beth Woods. Beatty was older than Woods, and considered herself responsible for paying the rent and providing groceries for the two women. In September of 1987, Beatty was hospitalized for treatment of extreme depression, and was placed under the care of Dr. Donald R. Butts who was a licensed psychiatrist. Butts was employed by the Burrell Mental Health Center. The Burrell Center is a private, nonprofit corporation that contracts with the state of Missouri to provide psychiatric and other mental health services to the people of this area. The patient pays according to his/her ability to pay and the State pays the rest of the bill. In Beatty's case, the charges were $55 an hour, of which amount Beatty paid $2. The State paid the rest. Dr. Butts prescribed an antidepressant, Desyrel, and a tranquilizer, Serax, for Beatty. One effect of the drugs was an energy loss because of which Beatty lost her job as a cook at Whorton's Restaurant. This situation left Beatty with no job and no money.

On December 4, 1987, Beatty had an appointment with Dr. Butts. Beatty seemed anxious and excited. In response to questions from the doctor, Beatty told him that she had just robbed a place, leaving the impression that it was "a convenience store or something from her descrip-

tion." The place turned out to be an APCO Service Station, because ' "I had to have some money and I got it." ' She told him that she had used a .22 caliber long barrel pistol to effectuate the robbery, which weapon she had previously described to Butts while she was confined in the hospital. Beatty told Butts not to tell anyone what she had told him. Butts gave Beatty some Xanax, which is a tranquilizer used to calm anxiety. Later that same day, Dr. Butts called Crime Stoppers, which is a private crime reporting agency. He did not give his name or Beatty's name, but suggested that if police wanted to find out about the robbery case, they should go to Whorton's Restaurant and inquire about a female who used to work there, and implied that there was "a causal connection between that person and what had happened" (the robbery). This information was relayed by Crime Stoppers to the Springfield Police Department.

Based on the information in the Crime Stoppers report, all of which information had been obtained from Dr. Butts, police officer Dana Carrington called Whorton's Restaurant and spoke to Mr. Whorton. Carrington described the robbery suspect, which description was taken from the offense report, and asked Whorton if he had any present or past employees matching that description. Whorton told him that he did know such a person, and that her name was Sharon Annette Beatty, and that she lived at 722 South Jefferson, Apartment 304, in Springfield. Carrington then entered Beatty's name in the MULES computer, and obtained a physical description of Beatty from her automobile driver's license, which was similar to the physical description given in the offense report. Carrington received more information concerning Sharon Beatty from a report in police files regarding an automobile accident she had been involved in on October 7, 1987.

Based on the above information, Carrington applied to an associate circuit court judge of Greene County for a search warrant, which warrant was issued. Armed with the warrant, Carrington and other police officers went to the Beatty apartment.

Glenda Woods opened the apartment door, and the officers entered. Carrington started to read the warrant to the two ladies, at which time Beatty said, "All right, I'm going to confess, I did it, but I want a lawyer." She told the officers that Miss Woods had nothing to do with the robbery, and showed them the closet where the coat she wore and the gun she used during the robbery were. Beatty then told the officers that the sweat shirt they were looking for was in the dirty clothes. The police retrieved these articles, as well as several other items connecting Beatty with the robbery. Beatty was then charged with first degree robbery and armed criminal action.

Defense counsel filed a motion to suppress statements made by Beatty to the police, and the articles seized by them from her apartment. The motion to suppress contended that the statements made by Beatty concerning the robbery, and the articles seized in her apartment linking Beatty with the robbery, were the fruits of an illegal search in that there was no probable cause for the issuance of the search warrant since the police action in seeking the warrant was based on information provided by an anonymous caller and that there was no way to verify the truthfulness of the anonymous caller. It also alleged that Dr. Butts was the anonymous caller, and that the information he gave Crime Stoppers in his telephone call "was a gross violation of defendant's rights under the doctor-client privilege and use of that information, and its subsequent use in the search warrant, was a violation of defendant's constitutional rights." Following an evidentiary hearing, the trial judge denied the motion. In regard to the matters regarding Dr. Butts that were alleged in the motion, the judge said:

THE COURT: Well, first of all with respect to Dr. Butts, I don't believe there is any state action involved there. If the state had a law which required that a psychiatrist reveal such statements and report such statements then there would be state action. But our law is exactly the opposite, he's prohibited from doing these things. So the state has done all it could to avoid disclosure.

The articles seized by the police during the search, as well as testimony concerning Beatty's admission of guilt were introduced in evidence against Beatty, over objections made by defense counsel on the same basis as the matters raised in the motion to suppress. The State had no other evidence other than that obtained as a result of the revelations made by Dr. Butts during his call to Crime Stoppers.

At the close of the State's evidence, Beatty moved for judgment of acquittal which was overruled. Beatty then took the stand in her own defense and admitted the robbery, but said that she did it out of desperation (no job, no money, etc). She said she had talked to her mother after the robbery and told her what she had done, and her mother told her to "[w]ait a little while and see what happens, but if they come to the door tell them everything." She said she did not think she would have committed the robbery had she not been on the prescription drugs and that because of the drugs her judgment was off. The jury found Beatty guilty of first degree robbery and armed criminal action. She was sentenced to ten years' imprisonment on the robbery charge and three years on the armed criminal action charge, in accordance with the jury verdicts, with the sentences to run concurrently.

On appeal, Beatty raises the following issues:

The court erred in overruling appellant's objections to the admission of testimony regarding any statements made by appellant to any police officer and the admission of any evidence seized from defendant's apartment in that said statements and evidence were seized in violation of appellant's right to the physician-patient privilege under Section 491.050(5), RSMo., because when appellant told Dr. Butts that she had robbed a place she made the statement in the course of treatment and as a patient of Dr. Butts and made the statements confidentially under the physician-patient privilege and she had not waived the privilege.

The court erred in not suppressing from evidence any evidence found in appellant's apartment and any statements made by appellant in that seizure of said evidence violated appellant's rights under the Fourth and Fourteenth Amendments to the United States Constitution against illegal search and seizure because the search warrant was based on the minimally verified unsworn statement of an anonymous caller with whom the police had no previous contacts.

The court erred in giving Instruction No. 10, MAI–CR3d to the jury in that this instruction should not have been given to the jury over defendant's objection because it was not supported by the evidence because there was no evidence that appellant committed the robbery or armed criminal action due to impairment by consumption of drugs.

Both parties concede that the issues raised in point one are a matter of first impression in the state of Missouri. The statutory section granting physician-patient privilege is § 491.060(5), RSMo (1986), which states:

 The following persons shall be incompetent to testify:

(5) A physician or surgeon, concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon.

This privilege applies to criminal as well as civil cases. *State v. Ermatinger,* 752 S.W. 2d 344, 350 (Mo.App.1988). The purpose of the statute is "to inspire confidence in the patient and to encourage him to make full disclosure to the physician as to his symptoms and condition." *Metropolitan Life Ins. Co. v. Ryan,* 237 Mo.App. 464, 172 S.W.2d 269, 272 (1943). The privilege can only be waived by the patient and the doctor must protect the patient by asserting the privilege when applicable. *St. Louis Little Rock Hosp., Inc. v. Gaertner,* 682 S.W.2d 146, 151 (Mo.App.1984). However, the applicability of the physician-patient privilege to a particular situation is determined by the circumstances, facts, and interests of justice. *State ex rel. Lester E. Cox Med. Ctr. v. Keet,* 678 S.W.2d 813, 815 (Mo. banc 1984).

We first address the question of whether Dr. Butts violated § 491.060(5) when he made the anonymous telephone call to Crime Stoppers. Section 491.060(5) bars a physician from testifying concerning information he has acquired from a patient while attending him in a professional capacity, and which information was necessary to enable him to prescribe for such patient. There is no question but that Dr. Butts was attending Ms. Beatty in a professional capacity, or that the information Beatty had given him was necessary to enable him to prescribe treatment. Butts was Beatty's doctor. When Beatty came for her appointment, she was in a highly emotional state. She had not been that way in previous sessions. They talked about the robbery, and about alternatives to that type of behavior. As a result of that conversation, Butts prescribed Xanax to calm Beatty down, and discussed future appropriate behavior with her. The only remaining question concerning the applicability of the statute is whether the doctor's anonymous telephone call constituted "testimony."

 In determining such question, we are guided by general principles of law concerning confidential communications. Claims of privilege present an exception to the general rules of evidence which provide that all evidence, material, relevant and competent to a judicial proceeding shall be revealed if called for. *Ex parte McClelland,* 521 S.W.2d 481, 483 (Mo.App.1975). As such, they are carefully scrutinized. *State ex rel. Chandra v. Sprinkle,* 678 S.W.2d 804, 807 (Mo. banc 1984). The physician-patient privilege set out in § 491.060(5) has no constitutional underpinning, is statutory in origin, and may only be modified, expanded, or abolished by the legislature. *State ex rel. D.M. v. Hoester,* 681 S.W.2d 449, 450 (Mo. banc 1984). The Missouri legislature has limited the protection accorded under the physician-patient privilege statute to those instances where

the physician is called upon to testify. In such cases, the law is that the physician is incompetent to testify to the disclosures made to him by his patient, unless the patient waives the physician-patient privilege. The word "testify," when used in its legal sense, means "to make a solemn declaration, under oath or affirmation, in a judicial inquiry, for the purpose of establishing or proving some fact." "Testimony" pertains only to evidence as is delivered by a witness at the trial of a cause, either orally or through depositions or affidavits. Black's Law Dictionary, 768 (abr. 5th ed. 1983). Such was not the case here. Since the revelations by Dr. Butts to a third person concerning confidential communications between Butts and his patient, Sharon Beatty, were not "testimony" in its legal and statutory sense, such revelations by Butts did not violate the statute.

That does not mean that we condone or approve of the disclosure made in this case. The primary public policy behind the physician-patient privilege statute is to inspire confidence in the patient so as to encourage him to make full and frank disclosures to his medical advisers as to his symptoms and condition so that the physician may properly treat his patient. *State ex rel. Husgen v. Stussie*, 617 S.W.2d 414, 416 (Mo.App.1981). It seems to us that if a physician, minister, priest, rabbi or attorney can employ the subterfuge of an anonymous phone call to defeat the confidentiality mandated by § 491.060(3), (4), and (5), then the public policy purpose of the statute is meaningless. However, determining public policy purposes of the statute is a matter for the legislature, not the courts. If the legislature sees fit to modify the confidentiality statute so as to prohibit physicians, spiritual advisers or attorneys from revealing to any other person, except under court order, confidential communications they have received from their patient, penitents and clients, it has a right to do so; but, until it does, the only prohibition dictated by the statute is that they cannot

testify in a court proceeding regarding such confidential communication.[1] We leave for another day the question of whether revelations of the type made in this case by Dr. Butts are an ethical violation on his part, as that question is not before us.

In her second point relied on, Beatty's attorney urges that the search warrant obtained by the police was based on "the minimally verified unsworn statement of an anonymous caller with whom the police had no previous contacts;" and for that reason, the search that followed, during which incriminatory statements were made by Beatty and articles were seized from her apartment that linked her with the robbery, violated her constitutional rights against illegal search and seizure.

Probable cause to support the issuance of a search warrant is determined by the "totality of circumstances" set out in the affidavits accompanying the application for the warrant, including the basis of knowledge of those supplying information of those circumstances so that the judge called upon to issue the search warrant can make a common sense decision as to whether there is a fair probability that evidence of a crime will be found at the place described in the application for the warrant. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *State v. Hodges*, 705 S.W.2d 585, 588 (Mo. App.1986). The personal knowledge of a confidential informant that is corroborated through other sources is enough to establish probable cause. *State v. Moiser*, 738 S.W.2d 549, 557 (Mo.App.1987).

In this case, Officer Carrington obtained a physical description of the robber from the offense report, found that the physical description matched that of Sharon Beatty, and compared that physical description with the description on Beatty's driver's license, which was obtained through use of the MULES computer. All of this was sufficient corroboration for the information received from the Crime Stop-

---

1. An example of the legislature making records and reports of the Division of Family Services confidential, subject to certain exceptions, is contained in § 210.150, RSMo (Supp.1988), which provides that information in the posses-

sion of an employee of the division shall not be available to any individual or institution, with the exceptions noted in the statute. Violation of the statute is a class A misdemeanor.

pers tip. The issuance of the search warrant was based on probable cause.

 In her remaining point relied on, Beatty's counsel asserts that the court erred in giving Instruction No. 10, over the objection of the defendant. This instruction, which is based on MAI–CR3d 310.50 reads as follows: "You are instructed that a drugged condition whether from Serax or Desyrel will not relieve a person of responsibility for her conduct." Note on Use (4) to MAI–CR3d 310.50 states even though there is evidence on the consumption of alcohol or drugs, if there is no evidence from which such impairment could be inferred, this instruction may not be given over the objection of of the defendant. Beatty's attorney contends that there was no evidence that Beatty was in a drugged condition when she committed the robbery, and, therefore, no evidence that Beatty's mind was impaired by drugs when the robbery was committed.

This contention is at variance with the facts. Beatty testified at trial on direct examination that at the time of the robbery she was taking Desyrel (an antidepressant) and Serax (a tranquilizer). During her cross-examination, this exchange occurred:

Q. (Prosecutor) ... The drugs didn't affect your judgment in that regard, did they?

A. Sir, I don't think I would have done it if I wasn't on those drugs. My judgment was off.

In view of Beatty's own testimony that her judgment was impaired at the time of the robbery because of her taking the drugs in question, the giving of the instruction was proper.

Judgment affirmed.

HOLSTEIN, C.J., concurs.

FLANIGAN, J., concurs in result in point one and concurs fully in points two and three.

CROW, P.J., recused.