STATE of Missouri, Respondent,

v.

Kenneth WILLIAMS, Appellant.

Kenneth WILLIAMS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 56738, 58224.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 5, 1991.

Deborah B. Wafer, St. Louis, for appellant.

William L. Webster, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Kenneth Williams, appeals from his jury convictions of first degree murder and armed criminal action. Appellant was sentenced by the court to life imprisonment without eligibility for parole for his murder conviction and was sentenced to a concurrent thirty year term for armed criminal action. Appellant also appeals from the dismissal of his Rule 29.15 motion. We affirm.

Appellant approached a group of people, some of whom he knew, as they were playing a game of craps on February 17, 1987. Appellant had been carrying some clothes, shirts and blue jeans, which he had hoped to sell. Appellant sold some of the items to one of the craps players for $10.00 and a PCP (phencyclidine) cigarette. PCP is a narcotic drug, a very potent one at that. Appellant smoked the cigarette by himself and joined in the craps game.

Just as one of the players, Derrick Mingo, ran out of money and prepared to leave, Anthony Bell happened by. Bell[1] was apparently adept at selling clothes in the Downtown St. Louis area (such proprietors were supposedly referred to on the streets as "boosters") and, when appellant was informed of this, he gave the rest of

1. Hereafter, this court will refer to Derrick Mingo and Anthony Bell as Mingo and Bell, respectively. There is no disrespect to Mr. Mingo or Mr. Bell intended by our manner of reference.

his clothes to Bell in order for Bell to sell them for him.

Mingo and Bell then left the game and headed towards Bell's mother's home. Bell stopped some time thereafter to try and sell some of appellant's clothing. He later arrived at Mingo's mother's home and sat in a lawn chair in the backyard.

Around 3:20 that same afternoon, appellant appeared at the Mingo residence and spoke with Bell. Bell then went by himself inside the Mingo home and told Derrick Mingo that appellant was there, was "high" and that he had a gun. Bell further instructed Mingo to call the police, which Mingo did.

Bell then rejoined appellant near the fence in Mingo's mother's backyard. Appellant later testified that he wanted his clothes back from Bell. Appellant shot Bell two to four times.[2] Mingo testified that after hearing a gunshot, he looked out of a bedroom window and saw appellant lean over the fence, point the gun at Bell and shoot Bell. Appellant, according to Mingo, smiled and walked away. Bell died as a result of the shooting.

Appellant was picked up two blocks away. Appellant admitted to the shooting but claimed as his defense, mental disease or defect.

On direct appeal, appellant asserts error only in the submission of instruction number 16, which instructed the jury that intoxication or being under the influence of a drug would not negate appellant's responsibilities for his actions. The instruction followed verbatim M.A.I.—C.R.3d 310.50 and read as follows:

> You are instructed that an intoxicated or drugged condition whether from alcohol or drugs will not relieve a person of responsibility for his conduct.

■ Appellant submits that the court erred in giving this instruction to the jury since there was no evidence to infer that appellant was impaired from his use of PCP. However, since appellant failed to raise this issue in his motion for a new trial, we are limited to reviewing it pursuant to plain error. Rule 30.20. *State v. Fowler*, 762 S.W.2d 540, 541 (Mo.App., E.D.1988). The standard for plain error regarding the submission of instructions requires that we only proclaim erroneous the court's action if it so misdirected or failed to instruct the jury on the law of the case so as to cause manifest injustice. *Fowler*, 762 S.W.2d at 541.

Appellant is correct in asserting that note 4 of the Notes on Use to M.A.I.—C.R.3d 310.50 states that the instruction may not be given where there is no evidence from which to infer impairment from the use of alcohol or drugs, even though there is evidence that they were indeed used. In our case, appellant admitted to smoking a PCP cigarette. Appellant claims that this admission is not sufficient to infer impairment.

In *State v. Beatty*, 770 S.W.2d 387 (Mo. App., S.D.1989), the submission of this instruction was upheld based on the testimony of the defendant that she had been taking an antidepressant and a tranquilizer under a doctor's prescription. Short of money, she robbed a gas station and testified at trial that "I don't think I would have done it if I wasn't on those drugs." *Id.* at 393. Based on this testimony by defendant, the giving of the instruction was proper. *Id.*

■ We are faced with an even stronger case. At trial, appellant's two brothers and his mother testified as to how PCP affects appellant. The gist of this testimony was that appellant would smile or laugh constantly for no reason and would often say things that did not make sense. Mingo and appellant's psychiatrist testified to the affects of PCP also. Mingo and his mother both testified that appellant was smiling or laughing after shooting Bell.

Moreover, during his confession to police, appellant stated that he shot Bell because he was high. At trial, appellant testified to the following:

2. The testimonial evidence indicated four shots, however, only two bullet casings were recov-  ered.

Q Had you smoked this PCP, this dip, before you shot Anthony?

A It was more than PCP.

Q What else was it?

A It had to be some angel dust on it too.

Q Angel dust on it too?

A Yeah, something powerful, and I had been smoking it because when I left my mind just left me, I fall from my mind back.

Q You did what to your mind?

A It was more than angle (sic)—it was more than PCP.

Q Why do you say that?

A Because it took me over. I was just on an angry level, I wasn't on no common sense, I was just on an angry level.

Contrary to appellant's assertion, there existed a substantial amount of evidence with which to infer that appellant was impaired when he shot and killed Bell. The submission of the instruction was not error.

We feel compelled to also briefly comment upon an argument which was advanced in appellant's brief regarding language contained in two other jury instructions which defined mental disease or defect as follows:

The term "mental disease or defect" means any mental abnormality regardless of its medical label, origin or source. However, it does not include an abnormality manifested only by repeated anti-social conduct or alcoholism without psychosis or drug abuse without psychosis.

■ Appellant argues that this definition inadequately set forth his defense since the definition did not define mental disease or defect as drug abuse *with psychosis*. Certainly, merely being intoxicated as a result of alcohol or drug use does not provide a defense under the law unless it has resulted in psychosis. *State v. Preston*, 673 S.W.2d 1, 8 (Mo. banc 1984). However, appellant wholly failed to bring this claim within our appellate jurisdiction by failing to state it in his motion for new trial or his point relied on.

Moreover, the propriety of a definition to the same effect was approved in *Preston*. The Supreme Court of Missouri, in upholding similar language, stated that the intent of the instructions was to "allow the jury to determine whether the defendant suffered from psychosis" because of his alcohol or drug consumption. *Id.*

In the case at bar, appellant offered testimony regarding his past childhood problems, mental retardation evidence and expert testimony which diagnosed appellant as being mentally retarded with psychosis since childhood. This expert also explained that appellant's continued use of PCP since high school created an organic mental disorder which was psychotic. This is not to suggest that contrary evidence was lacking. The State also tendered an expert who testified that appellant did not suffer from a mental disease or defect and was not psychotic because of his drug consumption.

Appellant was permitted the opportunity to fully establish his defense, aided by the instructions which followed those promulgated by our Supreme Court. The jury was not required to believe his evidence. His convictions and sentences are affirmed.

■ Appellant filed his pro se Rule 29.15 motion on October 30, 1989. However, the transcript of the record on appeal was filed on September 14, 1989. Rule 29.15(b) requires that appellant's motion "shall be filed within thirty days after the filing of the transcript in the appeal." The time limitations within Rule 29.15 are valid and mandatory. *Day v. State*, 770 S.W.2d 692, 695 (Mo. banc 1989). The court's dismissal was not clearly erroneous.

CRIST and SIMON, JJ., concur.