# United States Court of Appeals
## For the First Circuit

---

No. 99-2232

UNITED STATES OF AMERICA,

Appellee,

v.

JEFFREY LINK,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

---

Before

Torruella, Chief Judge,

Bownes, Senior Circuit Judge,

and Boudin, Circuit Judge.

---

Jack W. Pirozzolo, with whom Matthew C. Baltay and Foley, Hoag & Eliot, LLP, was on brief, for appellant.
Donald C. Lockhart, Assistant U.S. Attorney, with whom Margaret E. Curran, United States Attorney, and Mary E. Rogers, Assistant U.S. Attorney, were on brief, for appellee.

---

January 30, 2001

---

**TORRUELLA, Chief Judge.** On December 20, 1998, Rhode Island State Police officers, acting on a tip provided by a confidential informant, arrested appellant Jeffrey Link and seized a pistol and pistol case from his person. This evidence formed the basis of a one-count grand jury indictment charging appellant with a violation of 18 U.S.C. § 922(g), which prohibits the possession of a firearm by a convicted felon. The district court concluded that sufficient probable cause existed for Link's arrest and denied Link's motion to suppress the pistol and pistol case. Reserving the right to appeal this decision, appellant pled guilty to the charge pursuant to a plea agreement. We affirm.

### BACKGROUND

The district court's findings of fact are as follows. Between the end of November and December 20, 1998, Rhode Island State Police Detective Joseph DelPrete was involved in an investigation concerning allegations that Link, Ronald Cotoia, and others were committing burglaries in Maine, New Hampshire, and Rhode Island. This investigation was based on information provided by a confidential informant who had supplied information to DelPrete in prior investigations. The informant had a criminal record and had been paid on several occasions for supplying information.

On December 20, 1998, the informant contacted Officer DelPrete with information indicating that Link and Ronald Cotoia had

committed an armed robbery in Portsmouth, New Hampshire. In a series of calls throughout the day, the informant advised DelPrete that both Link and Cotoia had used a red Nissan Sentra as a get-away car, that the car had been abandoned on Route 10 in Cranston, Rhode Island, and of the license plate number of the car. Through the course of the investigation over the previous weeks, DelPrete had corroborated the informant's account of Link's criminal record, which included convictions for assault with a dangerous weapon, breaking and entering, and larceny. On December 20, moreover, New Hampshire State Police corroborated that an armed robbery involving a red get-away car had occurred the previous day in Portsmouth, New Hampshire. Police also found a red Nissan Sentra on Route 10 in the location indicated by the informant with license plates matching the number provided by the informant. Finally, police traced the vehicle registration to Denise Cotoia, a woman with the same surname as Link's alleged accomplice in the Portsmouth armed robbery.

Later in the day on December 20, the confidential informant advised Officer DelPrete that sometime that evening, Link and a man known as "Bones" were going to a house located at 27 Asia Street in Cranston. There, the informant said, Link would retrieve the firearm used in the robbery the day before. According to the informant, Link and another individual intended to sell the firearm or trade it for narcotics. The informant described the car that Link and Bones would be

driving as a black Mercury Cougar, and provided the license plate number for the car. A registration check on this number not only matched the color and make described by the informant, but also revealed that the vehicle was owned by a Lisa Link, a woman bearing the same last name as appellant.

Around 7:00 p.m. on December 20, Detectives DelPrete and Kevin Hawkins and four other state police officers set up surveillance near 27 Asia Street in Cranston. Shortly thereafter, the officers observed Link and another man pull up in a black Mercury Cougar and park in front of the address. While the other individual went to the trunk of the car, Link walked up the driveway and into the house. Link came out of the house, walked down the driveway towards the car, then turned and headed towards the back of the house again.

At this point, DelPrete, Hawkins, and two other officers left their surveillance positions and followed appellant behind the house. There, they found Link backing out of a screen door onto the porch. DelPrete identified himself as a state police officer and told Link to put his hands up. Link turned to face the officers, and took a few steps back towards the corner of the porch. His hands were not visible, and appeared to be under his coat. Hawkins asked Link several times to show his hands. When he did not comply, DelPrete trained his weapon on Link while Hawkins approached appellant. As Hawkins moved Link's hands away from his body, the gun case fell from underneath

Link's coat and opened as it hit the floor, revealing a nine-millimeter pistol and an ammunition clip. The officers wrestled Link to the floor of the porch, handcuffed him, and took him into custody. Appellant was indicted for violating 18 U.S.C. § 922(g) on April 14, 1999.

On May 29, 1999, Link filed a motion to suppress the pistol and its case, claiming that they were the fruits of an illegal arrest. In its bench opinion of July 1, 1999, the district court concluded that the arrest was lawful because it was based on the information given by the confidential informant, which had been corroborated and which provided the police with sufficient probable cause to believe that Link possessed a firearm as a convicted felon in violation of § 922(g). Link pled guilty pursuant to a plea agreement, and was sentenced to 188 months of imprisonment to be followed by five years of supervised release.

## DISCUSSION

Link raises two issues on appeal. First, Link argues that the police lacked probable cause for his arrest because the information provided to the police was either uncorroborated, non-incriminating, or unreliable. Second, Link claims that during the suppression hearing, the district court erroneously limited his attempts to elicit relevant testimony from the police witnesses concerning the informant's credibility. We will address each of these arguments in turn.

**A.**

-6-

"An officer may conduct a warrantless arrest as long as there is 'probable cause to believe that the suspect has committed or is committing a crime.'" United States v. Bizier, 111 F.3d 214, 216-17 (1st Cir. 1997) (citing United States v. Martínez-Molina, 64 F.3d 719, 726 (1st Cir. 1995) (internal citations omitted)). Probable cause exists if, at the time of the arrest, the collective knowledge of the officers involved was "sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." Id. at 217 (citing United States v. Cleveland, 106 F.3d 1056, 1060 (1st Cir. 1997) (internal citations omitted)). Although we review a district court's determination of probable cause de novo, the factual findings supporting the district court's conclusion will be overturned only if they are clearly erroneous. United States v. Shaefer, 87 F.3d 562, 565 (1st Cir. 1996); United States v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994). Because we hold that the information given by the confidential informant provided sufficient probable cause for Link's arrest, we need not address the government's argument that the seizure amounted to a Terry stop requiring only reasonable suspicion. See United States v. Acosta-Colón, 157 F.3d 9, 14 (1st Cir. 1998) ("[W]here a defendant challenges the constitutionality of a warrantless seizure undertaken on the basis of suspicion falling short of probable cause, the government bears the burden of proving that the seizure was . . . a Terry-type investigative stop.").

The district court correctly looked to the "totality of the circumstances" in evaluating whether Link's arrest was supported by probable cause. See United States v. Reyes, 225 F.3d 71, 75 (1st Cir. 2000). In doing so, the court noted numerous pieces of information corroborated by the police. First, police had verified Link's extensive criminal record, detailed by the informant, in the course of investigating a series of burglaries over the previous weeks. Second, Portsmouth police had confirmed the informant's account of an armed robbery involving a red get-away car the previous day. Third, as the informant indicated, the police discovered a red Nissan Sentra parked on Route 10 in Cranston, and the license plate number matched that provided by the informant. Fourth, this vehicle was registered to one Denise Cotoia, whose surname matched Link's alleged accomplice in the Portsmouth robbery. Finally, the informant accurately predicted Link's movements the evening he was arrested.

Notwithstanding this extensive verification, appellant claims that police failed to establish a specific connection between the red car and either Link or the robbery. Without such corroboration, argues appellant, all of the information available to the police was non-incriminating and provided no basis for suspecting criminal activity. Probable cause, however, "does not require the government to present evidence sufficient to convict the individual, but merely enough to warrant a reasonable belief that he was engaging in criminal activity."

Reyes, 225 F.3d at 75.  Thus, it may be true that, based upon the information corroborated before the arrest, police would be unable to conclusively prove a nexus between Link and the Portsmouth robbery.  However, the confirmed details of the informant's tips, placed in the context of the ongoing tri-state burglary investigation and Link's own criminal history, offered at least a nascent picture of suspicious activity.  This picture was further enhanced and substantiated when Link arrived in the exact car and at the precise location predicted by the informant.

This corroboration, moreover, renders inapposite appellant's analogy to the Supreme Court's decision in Florida v. J.L., 120 S. Ct. 1375 (2000).  The Court held in that case that police officers were unjustified in conducting a Terry stop when they relied solely on an anonymous tip identifying the defendant and alleging that he was carrying a gun.  Contrary to Link's assertions, the instant facts in no way implicate the core concern in J.L.: that the tip contain a "moderate indicia of reliability."  Id. at 1379.  First, unlike the tipper in J.L., the informant in this case was not only known to the police, but had also provided reliable information in previous investigations.[1]  See id. at 1378 (distinguishing between an anonymous

---

[1] The district court found, based upon DelPrete's testimony at the hearing, that the information provided by the informant in previous investigations resulted in (or supplied the basis for) some arrests. Although, as appellant argues, DelPrete did not make this causal link explicit, we believe it is a reasonable inference based on his

-9-

tipper and a known informant, "whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated"). More importantly, while the anonymous tip in J.L. provided "no predictive information and . . . left the police without means to test the informant's knowledge or credibility," the police here had several opportunities to verify both the retrospective and prospective information provided to them. The risk, therefore, "of a lying or inaccurate informer [had] been sufficiently reduced by corroborative facts and observations." United States v. Khounsavanh, 113 F.3d 279, 284 (1st Cir. 1997) (quoting 2 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment 168 (3d ed. 1996)).

The central question, then, is whether "verification of part of the informant's story [made] it sufficiently likely that the crucial part of the informant's story (i.e., allegations that criminal activity has occurred and that evidence pertaining thereto will be found in the location to be searched) [was] true." Id. The answer in this case is affirmative. Every single tip provided by the informant on December 20 proved to be correct, including the prediction of appellant's arrival at 27 Asia Street. Based upon the nature and accuracy of these tips, the police could reasonably expect that the critical piece of information -- that appellant was retrieving a gun from the given

---

testimony and accept the court's finding in our analysis. See Shaefer, 87 F.3d at 565 (noting that factual findings will not be disturbed absent clear error).

address -- was likely to be true as well.  This expectation was fortified by the officers' own observations when they reached the porch: appellant was exiting the residence, had his hands concealed beneath his jacket, and refused to show them despite being asked to do so several times.[2] At the time of arrest, therefore, the collective knowledge of the police was sufficient to warrant a prudent person's belief that Link was illegally in possession of a firearm, the crime for which he was ultimately indicted.

**B.**

Link also claims that the district court erroneously limited cross-examination regarding the informant's criminal history and fee arrangement with the police.  Reviewing the court's decision for abuse of discretion, United States v. Gomes, 177 F.3d 76, 80 (1st Cir. 1999), we find no error.

To begin, we cannot agree with Link's contention that the court "foreclosed" inquiry into the informant's criminal past or payment arrangement.  Link was permitted to establish, through DelPrete's testimony, that the informant had a criminal record. Although the court precluded Link from inquiring into the specific details of this record, he offers no explanation for his own failure to

---

[2] Although the district court confined its analysis to the officers' knowledge when they left their surveillance positions, we extend our inquiry to the time when Hawkins approached Link and actually arrested him.  See Bizier, 111 F.3d at 216-17 (stating that court analyzes officers' collective knowledge at the time of arrest).

pursue alternative, more general lines of questioning. Link was also allowed to explore the informant's fee arrangement with the police. In fact, Link elicited substantial facts from DelPrete, including: (1) that the Rhode Island State Police had paid the informant several times; (2) that the informant was not always paid for information; and (3) that the payments ranged in amounts from $100 to $1,000.

To the extent that it did limit appellant's examination, the court did not abuse its discretion for two reasons. First, at the outset of the suppression hearing, the district court denied Link's motion to discover the identity of the informant. The court explained that such disclosure was unnecessary since the information concerned a probable cause determination rather than the commission of the crime itself. Link does not challenge this ruling, nor does he deny that probing the details of the informant's criminal record might have compromised the informant's identity.

Second, any additional evidence concerning the informant's convictions or payments was ultimately irrelevant. Cross-examination serves to "impeach credibility and to expose the witness's biases and possible motives." United States v. Silvestri, 790 F.2d 186, 190 (1st Cir. 1986) (citing Davis v. Alaska, 415 U.S. 308, 316 (1974)). That purpose becomes less germane where, as here, the information underlying a probable cause determination has already been corroborated. See United States v. Taylor, 106 F.3d 801, 803 (8th Cir. 1997) (concluding

that district court did not abuse its discretion in preventing defendant from exploring informant's criminal record at suppression hearing because "[w]hen an informant's data is at least partially corroborated, attacks upon credibility and reliability are not crucial to the finding of probable cause"); cf. United States v. Paradis, 802 F.2d 553, 558 (1st Cir. 1986) (because agent "corroborated the information provided by the informant" and because evidence known to agent "reasonably implicated" defendant in crime under investigation, details of criminal history "would not have resulted in a lack of probable cause" to search defendant's house). As we have already discussed, the informant's tips in this case were diligently verified and, combined with the officers' own observations, provided ample probable cause for Link's arrest. Neither a detailed account of the informant's criminal record nor a further description of his payment schedule would alter this analysis. We therefore discern no error in the court's decision to limit inquiry into these topics.

**CONCLUSION**

The decision of the district court is **affirmed.**