2002-NMSC-023

52 P.3d 964

### STATE of New Mexico, Plaintiff– Respondent,

v.

### Rudolfo URIOSTE, Defendant–Petitioner.

### No. 26,287.

Supreme Court of New Mexico.

July 24, 2002.

Border Law Office, Dean E. Border, Tucumcari, NM, for Petitioner.

Patricia A. Madrid, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, NM, for Respondent.

## OPINION

MAES, Justice.

{1} Defendant Rudolfo Urioste entered into a conditional plea for possession of a controlled substance contrary to NMSA 1978, § 30–31–23(D) (1990), reserving the right to appeal his conviction on the issue of suppression of evidence. Defendant argued that the cocaine should be suppressed because the information leading to his arrest was received by police through an anonymous tip and was not sufficiently corroborated to constitute reasonable suspicion to justify stopping Defendant on the highway. The district court entered findings of fact and conclusions of law and determined that the information and corroboration provided enough reasonable suspicion that the law was being violated. Defendant appealed his conviction. The Court of Appeals, in a memorandum opinion, affirmed the district court's finding that the information came from a confidential informant. *State v. Urioste*, NMCA 20,257, slip op. At 5–6 (Mar. 23, 2000). The Court determined the information was sufficiently corroborated and held that the information provided the reasonable suspicion necessary for the investigative stop. *Id.* We affirm the Court of Appeals.

*FACTS*

{2} "The following facts are conclusive because they are based on the trial court's findings of fact, which [D]efendant does not challenge on appeal." *State v. Werner*, 110 N.M. 389, 390, 796 P.2d 610, 611 (Ct.App. 1990); *accord* Rule 12–213 NMRA 2002 ("The argument must set forth a specific attack on any finding, or such finding shall be deemed conclusive."). Defendant acknowledges that "all factual issues are un-contested." At approximately 4:30 p.m. on November 20, 1997, the Tucumcari Police Department received information that cocaine was being transported from Albuquerque to Tucumcari. Officer Tony Alvidrez of the Tucumcari Police passed on the information to Deputy Greg Greenlee of the Quay County Sheriff's Department at approximately 10:00 p.m. The following details were included in the report received by Deputy Greenlee: (1) The individual transporting the cocaine would be an Hispanic male with a long black ponytail, (2) driving a green, older model Ford Econoline van, (3) heading from the direction of Albuquerque toward Tucumcari, (4) arriving in Tucumcari at about 10:30 p.m., and (5) the driver lived at 1115 South Fifth Street, Tucumcari.

{3} At a suppression hearing, Deputy Greenlee testified that he was familiar with the vehicle at the address described above, and drove to the location and observed that the vehicle was not there. He then went to Interstate 40, proceeding toward Albuquerque, when he saw a green older model Ford Econoline van going the opposite way. Greenlee turned around and pursued the van. He corroborated the time of the van's appearance, it was 10:14 p.m., as well as the make, age and color of the van. He verified the apparent route of the van as consistent with a route going from Albuquerque to Tucumcari.

{4} Upon this information, Deputy Greenlee stopped the van. Suspecting one handling illegal drugs might be armed, he asked Defendant to get out of the van and submit to a frisk. He asked Defendant whether he had any guns or drugs in his possession, and Defendant said he did not. The situation then went out of control when Defendant bolted and ran away down the interstate. Deputy Greenlee yelled for him to stop, but he kept running, turning down a little driveway leading into a pasture. Deputy Greenlee finally caught up with Defendant, and, at gunpoint, placed him into custody. Defendant was arrested for evading and eluding an officer. Approximately four officers conducted a lengthy search of the area between midnight and 1:00 a.m. for cocaine Defendant might have thrown. Nothing was found at

that time. Another search was conducted the next day, and the contraband was discovered.

{5} Defendant pleaded guilty to possession of cocaine, contrary to NMSA 1978, § 30–31–23(D) (1990), and reserved the right to appeal the district court's denial of his motion to suppress the physical evidence of cocaine. Defendant appealed unsuccessfully to the New Mexico Court of Appeals on the theory that the Deputy Sheriff's stop of Defendant's van, which resulted in the seizure of the evidence, was not based on reasonable suspicion as required by law. We granted certiorari on May 24, 2000 (No. 26,287) and now consider Defendant's claim.

*STANDARD OF REVIEW*

■■■ {6} Appellate review of a district court's decision regarding a motion to suppress evidence involves mixed questions of fact and law. *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). As a reviewing court we do not sit as a trier of fact; the district court is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. *Id.* at 699, 116 S.Ct. 1657. We view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings. *State v. Boeglin,* 100 N.M. 127, 132, 666 P.2d 1274, 1279 (Ct. App.1983). Determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal. *Ornelas v. United States,* 517 U.S. 690, 691, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). *See also State v. Attaway,* 117 N.M. 141, 145–46, 870 P.2d 103, 107–08 (1994) (concluding issues, such as search and seizure issues, lending themselves to the application of constitutional principles, abstract legal doctrines, and underlying policy, should be decided by an appellate court de novo). In making a determination about reasonable suspicion, a reviewing court must look at the totality of the circumstances. *United States v. Arvizu,* 534 U.S. 266, ——, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002). Police officers possess reasonable suspicion when they are "aware of specific articulable facts" that, judged objectively, "would lead a reasonable person to believe criminal activity occurred or was occurring." *State v. Pallor,* 1996–NMCA–083, ¶ 12, 122 N.M. 232, 923 P.2d 599 (internal quotations and citation omitted).

*CONFIDENTIAL INFORMANT OR ANONYMOUS TIP?*

■■ {7} The parties argue extensively over whether the information that was supplied to the Deputy came from a "confidential informant" or was an "anonymous tip." The distinction is important because "the veracity of persons supplying anonymous tips is 'by hypothesis unknown and unknowable,'" *Alabama v. White,* 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (quoting *Illinois v. Gates,* 462 U.S. 213, 237, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)), while the reliability of a tip can be better gauged if it comes from a known source. Defendant argues on the basis of Deputy Greenlee's testimony at the hearing on the motion to suppress that he received the information from Tucumcari Police Officer Alvidrez, who had received the information from an unidentified third person. Officer Alvidrez did not testify at the suppression hearing, and the State presented no evidence that this informant had provided reliable information in the past. Deputy Greenlee testified that Officer Alvidrez had told him that the third person was a "confidential informant." Defendant argues that the tip must have come from a reliable confidential informant or the details in the tip must be "reliable in [their] assertion of illegality, not just in [their] tendency to identify a determinate person," citing *Florida v. J.L.,* 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).

{8} The State argues contrarily that "[t]here is no evidence in the record to suggest that the tip was anonymous," seeming to suggest this Court should presume it was not, and invokes the "fellow officer rule," whereby "probable cause is determined by the courts on the basis of the collective information of the police involved in the arrest, rather than exclusively on the extent of the knowledge of the particular officer who may actually make the arrest." *Karr v. Smith,* 774 F.2d 1029, 1031–32 (10th Cir.1985); *see also State v. Warren,* 103 N.M. 472, 476, 709 P.2d

194, 198 (Ct.App.1985) (finding that the "police team qualification" rule applies when "the arresting officer relied upon information and observations made by other officers to establish the probable cause for his belief that [a misdemeanor] was being committed in his presence."). However, the State never called Officer Alvidrez to testify concerning whether the information was from a known informant whose reputation could be assessed and who could be held responsible if the allegations turned out to be fabricated. Because, under the facts of this case, a stronger showing than this would have to be made by the State to establish that the information came from a confidential informant, we analyze the source of the information as though it were an anonymous tip.

### SUPPRESSION OF THE EVIDENCE

■ {9} Generally, in cases involving informants, "the central issue ... is whether the informant's information is so reliable and complete that it makes past, present or pending criminal conduct sufficiently likely to justify a stopping of the designated person for investigation." 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.4(h), at 213 (3d ed.1996). More specifically to this case, "[t]he central question ... is whether 'verification of part of the informant's story [made] it sufficiently likely that the crucial part of the informant's story (i.e., allegations that criminal activity has occurred and that evidence pertaining thereto will be found in the location to be searched) [was] true.' " *United States v. Link,* 238 F.3d 106, 110 (1st Cir.2001) (quoting *United States v. Khounsavanh,* 113 F.3d 279, 284 (1st Cir.1997) (alteration in *Link* )). Thus we must decide whether, upon its verification by Deputy Greenlee, the tipster's story made it sufficiently likely that Defendant was carrying cocaine.

■ {10} A police officer cannot forcibly stop an individual for purposes of investigation merely on the basis of an "inchoate and unparticularized suspicion or 'hunch' " that criminal activity may be afoot. *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *accord United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Rather, the officer must

look at the "totality of the circumstances-the whole picture." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *accord Sokolow,* 490 U.S. at 8, 109 S.Ct. 1581. The officer must be able to form a "reasonable suspicion, based on objective facts," *Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *see also Sokolow,* 490 U.S. at 7, 109 S.Ct. 1581; *United States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), that the individual in question "is, or is about to be, engaged in criminal activity." *Cortez,* 449 U.S. at 417, 101 S.Ct. 690; *see also Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). The level of suspicion required for an investigatory stop "is considerably less than proof of wrongdoing by a preponderance of the evidence." *Sokolow,* 490 U.S. at 7, 109 S.Ct. 1581. A reasonable suspicion of criminal activity can arise from "wholly lawful conduct." *Id.* at 9, 109 S.Ct. 1581 (quoting *Reid v. Georgia,* 448 U.S. 438, 441, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (per curiam)). In determining whether reasonable suspicion exists in a particular case, "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Sokolow,* 490 U.S. at 10, 109 S.Ct. 1581 (quoting *Gates,* 462 U.S. at 243 n. 13, 103 S.Ct. 2317. *See generally* David S. Rudstein, *White on White: Anonymous Tips, Reasonable Suspicion, and the Constitution,* 79 Ky. L.J. 661, 663–64 (1990) (explaining the "reasonable suspicion" standard)).

{11} We begin our analysis by positing two United States Supreme Court cases which have come down on either side of the line dividing a legal stop from an illegal one. These are *White* and *J.L.* In *White,* an anonymous tip reported that a person named Vanessa White would leave No. 235 C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with a broken right taillight, to go to Dobey's Motel with an ounce of cocaine inside a brown attache case. 496 U.S. at 327, 110 S.Ct. 2412. The Supreme Court in a "close case" found the tip corroborated. *Id.* at 325, 110 S.Ct. 2412. The *White* court said:

What was important was the caller's ability to predict respondent's *future behavior,* because it demonstrated inside information—a special familiarity with respondent's affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about the individual's illegal activities.... When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop.

*White,* 496 U.S. at 332, 110 S.Ct. 2412.

{12} Defendant relies on *J.L.* In that case, an anonymous caller reported to police that a young African American male, standing at a particular bus stop and wearing a plaid shirt, was carrying a gun. 529 U.S. at 268, 120 S.Ct. 1375. Two officers responded. They arrived at the bus stop and saw three African American males "just hanging out [there]." *Id.* One of them, J.L., was wearing a plaid shirt. *Id.* They did not see a firearm, and J.L. made no threatening or unusual movements. *Id.* J.L. was frisked and a gun was seized from his pocket. *Id.* He was charged with carrying a concealed firearm while under the age of eighteen. *Id.* at 269, 120 S.Ct. 1375. The Supreme Court agreed with and affirmed the Florida Supreme Court below, which had stated that anonymous tips "are generally less reliable than tips from known informants and can form the basis for reasonable suspicion only if accompanied by specific indicia of reliability, for example the correct forecast of a subject's 'not easily predicted' movements." *J.L.,* 529 U.S. at 269, 120 S.Ct. 1375 (quoting *J.L. v. State,* 727 So.2d 204, 207 (Fla.1998) (quoting *White,* 496 U.S. at 332, 110 S.Ct. 2412)). It was held in *J.L.* that police did not have reasonable sus-

picion to stop and frisk the subject. 529 U.S. at 271, 120 S.Ct. 1375.

An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity.

*Id.* at 272, 120 S.Ct. 1375.

{13} The *J.L.* Court, in considering *White,* made what we discern as a distinction between a tip predicting a subject's movements on the one hand, and on the other, a tip which merely describes a status quo, or the state of things at a given time, of which the subject is a part. With the passage of time comes the ability of the observer to ascribe secondary qualities, beyond an initial picture, to what is being observed. In the case where an anonymous tip is being corroborated on the scene by a law enforcement officer, and no overt criminal activity is observed, it is more reasonable to say that an adequate suspicion can be formed where the suspect is seen moving or acting in accordance with the tip. It is much more difficult to form a reasonable suspicion when only a status quo is reported to police and that is all they see. This is the import of the fact that the defendants in *White* and in the instant case were most apparently coming from and headed to certain points, and, at least here, seen moving past a certain point "on schedule."

{14} Thus the most important factor is established in the determination of the reasonableness of Deputy Greenlee's suspicion—Defendant's movements through time. If the tipster can be said to be in on an action that is taken by the suspect in the future, from the point of view of the time the tip is given, then as a matter of law, the asserted illegality can be associated with the prediction so as to increase the reliability of the tip. *White.*[1] The time element is eminently present in the instant case, where the informant correctly told police what time Defendant would be at a certain place and where his movements were likely taking him.

---

1. *Cf. Sanders v. United States,* 751 A.2d 952, 954 (D.C.2000) ("Of course, accurate prediction of

future events has no 'talismanic quality' and is only one indicium of reliability.")

{15} Having established this, we will also make a fact-by-fact comparison between *White* and this case to determine whether enough facts were corroborated beyond the basic and important future movement factor. The exact point of origin of the suspect was not corroborated in either case. The exact destination of the suspect was not corroborated in either case. The description of the vehicle in question was corroborated in both cases. As to the added fact in each case, in *White*, the existence of the brown attache case was not corroborated; in this case, the fact that the vehicle was not at Defendant's residence was corroborated. This simple review of the facts leads to the inevitable conclusion that the instant case is nearly identical in all relevant respects to *White*.

{16} The New Mexico Court of Appeals has adopted the time-oriented analysis of *White*. It was said in *State v. Flores*, 1996 NMCA 059, ¶ 8, 122 N.M. 84, 920 P.2d 1038:

An anonymous tip may justify an investigatory stop if the information is sufficiently corroborated by subsequent investigation to establish reliability ... Although the United States Supreme Court' described it as a close case in *White*, the court was persuaded because *certain behavior predicted in the tip actually occurred* in several particulars though not all the behavior was criminal in nature.

In fact, none of the behavior observed by officers in *White* was criminal in nature. *White*, 496 U.S. at 327, 110 S.Ct. 2412. Thus it is clear that if enough familiarity with a suspect's affairs is shown by the predictions in an anonymous tip, no overtly criminal behavior need be observed. This point was made in *Reid*, 448 U.S. at 441, 100 S.Ct. 2752, in which the Court noted that even in the seminal stop and frisk case, *Terry*, reasonable suspicion arose from wholly lawful conduct. *See Terry*, 392 U.S. at 27–28, 88 S.Ct. 1868. The Court of Appeals has also said, in *State v. Bedolla*, 111 N.M. 448, 452, 806 P.2d 588, 592 (Ct.App.1991):

The [Supreme Court in *White*] distinguished between those tips so completely lacking in indicia of reliability that they would either warrant no police response or require further investigation before a forc-

ible stop of a suspect would be authorized, and those tips that either contained indicia of reliability within them or are sufficiently corroborated. In *White*, there was nothing in the tip itself to indicate reliability. However, the independent corroboration by the police officer of "significant aspects of the informer's predictions" imparted some degree of reliability.... The court placed special importance on the caller's ability to predict future behavior.

(Internal citations omitted). A factual comparison between *Bedolla* and the instant case is useful. In *Bedolla*, police received an anonymous tip that two men, one with a purple Nissan pickup with California plates, were dealing cocaine out of a room at the Navajo Motel. *Id.* at 449, 806 P.2d at 589. The officers went to the motel and after about an hour a purple Nissan drove up; three men exited and went into the motel. *Id.* After some time, four people came out of the motel and got into two vehicles, the purple Nissan and a blue Nissan with California plates. *Id.* Both vehicles drove away. Police followed the purple Nissan and stopped it about a quarter-mile from the motel. It was not stopped for any traffic violation, and there were no signs of any criminal activity. *Id.* Defendant was questioned and admitted there were drugs in the motel room, which were found after a search. *Id.* The Court of Appeals held the evidence should be suppressed, finding that "[d]espite the hour-long surveillance of room 125, and following defendant's truck for approximately one-quarter mile, [police] investigative work ... corroborated nothing more of the tip than that the purple Nissan vehicle existed, that it had California tags, and that it was driven by an unidentified person." *Id.* at 451, 806 P.2d at 591. There was significantly more corroboration in the instant case, including a description of the suspect, his vehicle, its destination, its direction of travel, and the time and day the suspect would be traveling on Interstate 40, to bring it out of the purview of *Bedolla* and under the rule of *White*. In this case, "the anonymous [tip] contained a range of details relating ... to future actions of third parties ordinarily not easily predicted." *White*, 496 U.S. at 332,

110 S.Ct. 2412 (quoting *Gates,* 462 U.S. at 245, 103 S.Ct. 2317).

*CONCLUSION*

{17} The *White* Court also stated that "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." The corroboration of the vehicle, the fact that the vehicle was not at Defendant's residence, the direction Defendant was traveling, and the time Defendant was stopped add to the reliability of the tip in this case. We hold that the reliability coming from these corroborated details was sufficient to justify the stop. The Court of Appeals is therefore affirmed.

{18} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, Chief Justice, JOSEPH F. BACA, Justice, GENE E. FRANCHINI, Justice and PAMELA B. MINZNER, Justice (dissenting).

MINZNER, Justice (dissenting).

{19} I respectfully dissent. I concur in the majority's decision to analyze the tip Officer Alvidrez received as an anonymous tip and to compare the facts of this appeal with the facts of two United States Supreme Court cases, *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), which was decided after the Court of Appeals affirmed the district court, and *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), on which the Court of Appeals relied in affirming the district court. I also concur in the standard of review applied by the majority. For the reasons that follow, however, I believe we ought to conclude that Deputy Greenlee stopped Defendant on the highway prior to developing the reasonable suspicion required by the Fourth Amendment to make a valid investigatory stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). I believe we ought to conclude that Defendant's Fourth Amendment rights were violated by the highway stop and that the district court erred in denying his motion to suppress evidence developed as a result of that stop. Therefore, I would reverse and remand this matter to the district court with instructions to grant Defendant's motion to suppress.

{20} A valid investigatory stop under *Terry* requires reasonable suspicion that the person stopped is engaged in criminal activity. *White,* 496 U.S. at 330–31, 110 S.Ct. 2412. "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." *Id.* at 330, 110 S.Ct. 2412. "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.' " *J.L.,* 529 U.S. at 270, 120 S.Ct. 1375 (citation omitted) (quoting *White,* 496 U.S. at 329, 110 S.Ct. 2412). When an anonymous tip has been "suitably corroborated," however, it may support a valid investigatory stop. *Id.* The question in this appeal is whether or not we may conclude as a matter of law that the tip Greenlee received was "suitably corroborated."

{21} In *White,* an anonymous tip was held to have been suitably corroborated when the police observed a woman fitting the description given by the tipster exit the described apartment complex, get into the described vehicle, and take the most direct route to the described location. 496 U.S. at 327, 110 S.Ct. 2412. In *J.L.,* an anonymous tip was held to have been insufficient when the police observed a young man fitting the description given by the tipster at the location included in the tip. 529 U.S. at 268–69, 120 S.Ct. 1375. The difference between the two cases seems to turn on the extent to which the anonymous tip accurately predicts the future movements of the subject. As the Court noted in *White,*

> Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities. When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller

was honest but also that he was well informed, at least well enough to justify the stop.

496 U.S. at 332, 110 S.Ct. 2412 (citation omitted). The Court further refined this point in *J.L.*, stating that "[t]he reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." 529 U.S. at 272, 120 S.Ct. 1375.

{22} Deputy Greenlee did not see the driver of the van until after he had stopped Defendant. He did not testify that he recognized the van that he stopped. As I understand the record on appeal, he observed the eastbound travel of an older model green Econoline van toward Tucumcari at about the time the tipster had said a van of that type, owned by a man who lived in Tucumcari would reach Tucumcari. The fact that Defendant's van was not located at 1115 South Fifth Street when Deputy Greenlee drove by the residence did not corroborate that the van ordinarily located there was traveling from Albuquerque to Tucumcari or that the van he later observed on Interstate 40 was the van ordinarily located at 1115 South Fifth Street.

{23} Approximately 135 miles of interstate lie between Albuquerque and Tucumcari, a distance that, if traveled at highway speeds, would take less than six hours to cover. Had Officer Alvidrez communicated to Deputy Greenlee the time at which the tip was received, Deputy Greenlee would have had a basis for believing that the tipster was familiar with the schedule of the person who was driving the van he stopped. There is nothing in the record before us to indicate that Officer Alvidrez did so. There is also no basis in the record for believing that Deputy Greenlee possessed this information from any other source. I believe the question of whether Deputy Greenlee had the required reasonable suspicion to stop Defendant depends on how much of the information provided by the tip and conveyed to him Deputy Greenlee himself corroborated. *See United States v. Shareef*, 100 F.3d 1491, 1504 (10th Cir.1996) (holding that information supporting reasonable suspicion held by one officer could not be imputed to another officer absent evidence that the information was communicated between the two). In any event, since Deputy Greenlee did not identify the driver until after he stopped the van, I am not persuaded that we can conclude he corroborated the movements of the subject described in the tip prior to the stop.

{24} In comparing *White* to the present case, the majority notes that "[t]he exact point of origin of the suspect was not corroborated in either case." Majority Opinion, ¶ 16. I would characterize *White* somewhat differently, however, because in that case the police officers observed the suspect, a woman, leaving the apartment building specified in the tip and entering a car that the tipster had described by make, color, condition and location. 496 U.S. at 327, 110 S.Ct. 2412. The police may not have seen the specific apartment from which the suspect emerged, but I think it is fair to characterize the point of origin in *White* as corroborated. The majority also notes that "[t]he exact destination of the suspect was not corroborated in either case." Majority Opinion, ¶ 16. Again, I would characterize *White* somewhat differently. In *White*, the police stopped the woman they suspected before she actually reached the hotel to which the tip indicated she was traveling. They had followed her, however, for some distance, from the point of origin and stopped her "just short" of the destination indicated in the tip. 496 U.S. at 327, 110 S.Ct. 2412. Moreover, the suspect had driven along the "most direct route possible" to that destination, despite the fact that the route "involved several turns." *Id.* at 331, 110 S.Ct. 2412.

{25} In *J.L.* the tip described the suspect and claimed that he was carrying a concealed firearm. 529 U.S. at 268, 120 S.Ct. 1375. In our case, although the tip did predict future behavior (that an Hispanic male with a long black ponytail who lived at 1115 South Fifth Street in Tucumcari would drive from Albuquerque to Tucumcari at about 10:30 p.m.), prior to the stop Deputy Greenlee only observed facts that were consistent with the tip, rather than confirming that the tipster had predicted the suspect's movements. It is as if Deputy Greenlee had received a tip at about 10:00 p.m. that a green older model

Econoline van was, at that moment, traveling East on Interstate 40 heading toward Tucumcari. Viewed in this light, I think the facts of this case are difficult to distinguish in a meaningful way from the facts of *J.L.*

{26} *White* and *J.L.* make clear that what is important is the extent to which the predictive information in an anonymous tip is corroborated. While the predictive elements of the tip in this case make it look like the tip in *White*, I believe we ought to conclude that the lack of corroboration of those elements precluded a valid investigatory stop. The lack of predictive information in *J.L.* failed to provide any indication that the anonymous informant had access to information about the subject of the tip and was therefore "likely to also have access to reliable information about [the subject's] illegal activities." *White*, 496 U.S. at 332, 110 S.Ct. 2412. The lack of corroboration of predictive information prior to the stop in this case seems to me to require the same conclusion.

{27} In concurring in *J.L.*, Justice Kennedy wrote that the ability to accurately predict future conduct of an alleged criminal may not be the only way in which an anonymous tip would "provide the lawful basis for some police action." 529 U.S. at 275, 120 S.Ct. 1375 (Kennedy, J., concurring). Justice Kennedy then provided three examples of other anonymous tips that might bear sufficient indicia of reliability: (1) a caller with a recognizable voice who accurately predicts criminal behavior on two successive evenings and provides a third tip; (2) an anonymous informant's face-to-face, as opposed to telephonic, contact with the police; and (3) anonymous telephone tips that are traced using caller identification and voice recording. *Id.* at 275–76, 120 S.Ct. 1375. In discussing the first example, Justice Kennedy wrote that "there would be a plausible argument that experience cures some of the uncertainty surrounding the anonymity, justifying a proportionate police response." *Id.* at 275, 120 S.Ct. 1375; *see generally State v. Therrien*, 110 N.M. 261, 264, 794 P.2d 735, 738 (Ct.App. 1990) (discussing the appropriate analysis of an anonymous tip for purposes of determining probable cause to support a warrant), *overruled on other grounds by State v. Bark-*

*er*, 114 N.M. 589, 594, 844 P.2d 839, 844 (Ct.App.1992). None of these alternatives are helpful in supporting the stop in this case.

{28} Anonymous tips that predict behavior are not inherently more reliable than anonymous tips that do not. An officer who has no facts to corroborate and an officer who fails to corroborate predictive movement both lack any indication that the informant is reliable, and therefore both lack the reasonable suspicion required by the Fourth Amendment in such cases. *Cf. Therrien*, 110 N.M. at 264, 794 P.2d at 738 ("The veracity of [a crime stoppers caller] must be established just as it must for any other informant.")

{29} A concern about anonymous tips, aside from the inefficiency of unreliable tips, arises from their potential for harassment. *See J.L.*, 529 U.S. at 272, 120 S.Ct. 1375; *see also White*, 496 U.S. at 333, 110 S.Ct. 2412 (Stevens, J., dissenting). We review anonymous tips with that concern in mind. Anonymous tips, therefore, present difficult questions regarding reasonable suspicion under the Fourth Amendment. The Supreme Court has provided some guidance by accepting certiorari in two cases that reach different results. As the Court explained in *J.L.*, "[i]f *White* was a close case on the reliability of anonymous tips, this one surely falls on the other side of the line." 529 U.S. at 271, 120 S.Ct. 1375. Given the ways in which I believe this case differs from *White*, and the ways in which it is similar to *J.L.*, I believe this statement accurately describes Defendant's case as well. "The corroborated information was in no sense incriminatory. Also, it was so readily available to any member of the public that the caller's accuracy in this regard was not probative of his accuracy regarding covert criminal activity at the location." *Therrien*, 110 N.M. at 264, 794 P.2d at 738.

{30} I note that *J.L.*, the more recent opinion, was a unanimous result and that *White*, the older opinion, was not. I also note that, as in *J.L.*, "[t]he facts of this case do not require [speculation] about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of

reliability." *J.L.*, 529 U.S. at 273, 120 S.Ct. 1375. Finally, I note that the State's primary argument on appeal has been that the tip was not anonymous.

{31} It does seem possible that more information was available to Deputy Greenlee or to Officer Alvidrez than the record on appeal indicates. As the record stands, however, I am not persuaded that the State has shown sufficient evidence to support a determination that Deputy Greenlee had sufficient reasonable suspicion to stop Defendant on the highway. A majority of this Court being of a different view, I respectfully dissent.