This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **NO. 33,417**

**EMMANUEL SALAZAR,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Mark T. Sanchez, District Judge**

Hector H. Balderas, Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**GARCIA, Judge.**

{1} Defendant, Emmanuel Salazar, entered a conditional plea of no contest to one count of burglary under NMSA 1978, Section 30-16-3(B) (1971), a fourth degree felony, and reserved the right to appeal the denial of his motion to suppress. On appeal, he claims that the district court erred in denying his motion to suppress statements and evidence obtained as a result of a traffic stop expanded to include an auto burglary investigation. He primarily contends that (1) the officer who stopped him for an equipment violation did not have reasonable suspicion to expand the stop into an auto burglary investigation, (2) the duration of the expanded investigation was unreasonable, and (3) the State failed to establish that Defendant had consented to a search of his truck. We conclude that the officer had reasonable suspicion to expand the traffic stop into an auto burglary investigation. We do not address the argument concerning duration because Defendant did not preserve this argument. However, we conclude that the State did not meet its burden to establish that Defendant voluntarily consented to the search of his truck that occurred during the extended investigation. Accordingly, we partially reverse the district court's denial of Defendant's motion to suppress and remand this case to the district court for further proceedings consistent with this Opinion.

**BACKGROUND**

**{2}** The following facts, viewed in the light most favorable to the State as the prevailing party, were adduced at the hearing on the suppression motion. *See State v. Vandenberg*, 2003-NMSC-030, ¶ 18, 134 N.M. 566, 81 P.3d 19 (stating that appellate courts in reviewing a denial of a motion to suppress "review the facts in a light most favorable to the prevailing party, as long as the facts are supported by substantial evidence").

**{3}** On May 23, 2012, an auto burglary occurred in the parking lot of a Walmart located in Hobbs, New Mexico, and the event was recorded by Walmart's security cameras. Detective Porter of the Hobbs Police Department reviewed the security videos taken in the parking lot and inside the store. The videos depicted the incident, the suspect's truck in the parking lot, and the suspect inside the store after the incident. Based upon this investigation, still images of the suspect's truck and a "body shot" of the suspect were posted at the police department. Officer Benavidez of the Hobbs Police Department saw these photos "every day" that he reported for duty.

**{4}** About nine days after the auto burglary, on June 1, 2012, Officer Benavidez stopped Defendant's truck for an equipment violation. During the traffic stop, the officer recognized that Defendant and his truck "matched" the suspect and truck depicted in the photos posted at the police department. Officer Benavidez described the similarities concerning the truck: "older model, white pickup, short bed, had rims

3

on it—not factory rims—had chrome rims, bigger rims." And he described the similarities concerning the suspect: "about 5'5", . . . heavyset, he had on a striped shirt, and you can tell he was Hispanic." As a result of these observations, the officer asked Detective Porter to respond to the scene of the traffic stop. The officer proceeded to give Defendant a verbal warning for the defective equipment violation and issue him a citation for failure to provide proof of insurance. The officer estimated that it had taken about ten minutes for Detective Porter to arrive on scene. When asked what he observed during the interaction between Detective Porter and Defendant, the officer stated only that Detective Porter was "talking" to Defendant and that, although he "[didn't] recall" seeing what Detective Porter did concerning Defendant's vehicle, he thought Detective Porter "might have been looking, looking in it."

{5}     Pertinent here, Detective Porter's written report stated,

> I arrived at the scene of the traffic stop and immediately saw that the white, 2000 Chevrolet pickup driven by [Defendant] was consistent with the vehicle used by the suspect during the auto burglary at Walmart. . . . I saw that [Defendant's] physical appearance was consistent with the subject that committed the auto burglary at Walmart on [May 23, 2012]. I asked [Defendant] to exit his vehicle and I continued to talk with him. [Defendant] told me that he does have a large stereo speaker, in a gray box, in his vehicle. [Defendant] allowed me to look at this speaker. I saw that the speaker was consistent with the description given by the victim of the auto burglary.
>
> I continued to talk with [Defendant] and explained to him that I was investigating an auto burglary that occurred at Walmart. I told

[Defendant] that the entire auto burglary was captured by surveillance cameras. I then told [Defendant] that he was the person who committed the auto burglary. I asked [Defendant] if the person that he stole the speakers and amplifier from owed him money. [Defendant] told me that the person he stole the speakers and amplifier from did owe him money. I photographed the speaker in [Defendant's] pickup.

Defendant was then released from the scene. About two weeks later during an interview with Detective Porter, Defendant confessed to stealing the speakers. A warrant was issued for Defendant's arrest another two weeks later, on June 29, 2012,[1] and Defendant was later charged under the criminal information with auto burglary.

**A.    The Suppression Motion**

{6}    Defendant's motion to suppress was made under both the federal and state constitutions. The motion contained three assertions that are pertinent in this appeal. First, it asserted that the officer did not have reasonable suspicion to expand the traffic stop for defective equipment into an investigation into the auto burglary. Second, the motion asserted that "[t]he officer's conclusory testimony that he received 'consent'

---

[1]The district court found in its order that Defendant was "arrested under a warrant" before the detective obtained Defendant's confession and concluded that the "warrant and interview conducted under the warrant" were constitutional. However, it appears from the record that a warrant was not issued for Defendant's arrest until two weeks after the detective interviewed Defendant and obtained his confession. It appears that Defendant's presence at the interview during which he confessed to the crime was not the result of an arrest warrant, but rather the result of the detective calling Defendant and Defendant agreeing to come to the police department for the interview.

to search, by itself, is not enough to meet [the State's] burden" and "testimony merely showing . . . Defendant's cooperative response is not sufficient for the State to meet its burden to show voluntary consent." And third, it asserted that "the fruits of that search must be suppressed" along with "[a]ny and all items or evidence obtained from Defendant's vehicle pertaining to any alleged auto burglaries charged in the [c]riminal [i]nformation[,] . . . [a]ny and all statements made by Defendant as the result of the illegal search[,]" and "all physical evidence and statements flowing from the illegal . . . search[.]" The State did not file a written response to the suppression motion.

**B.    The Suppression Hearing**

{7}    At the hearing on the suppression motion, the prosecutor did not address Defendant's assertions that the detective's inspection of the speaker inside the truck was a search and that there was insufficient evidence to establish that Defendant consented to the search. Instead, the prosecutor's argument focused only on the assertion that the traffic stop in this case was properly expanded into an investigation of the auto burglary. Detective Porter did not testify at the suppression hearing. Instead, the prosecutor asked the district court to take judicial notice of the criminal complaint filed in this matter, which included a copy of Detective Porter's written report. The prosecutor also did not object to any lack of particularity in Defendant's motion concerning what specific evidence should be suppressed.

## C.       The Order Denying the Suppression Motion

{8}      In denying Defendant's motion to suppress, the district court found, in pertinent part,

> Officer Benavidez formed a suspicion that . . . [D]efendant and the truck driven by him were associated with the burglary that had occurred in the Walmart parking lot. . . . based on the truck and the description of . . . [D]efendant, and he articulated details of each that [led] him to suspect . . . [D]efendant of having committed the burglary at Walmart (the make, model, color, and length of the bed of the truck, the style of its tires, and the build, height, and ethnicity of . . . [D]efendant).
>
> . . . .
>
> Detective Porter asked to see a stereo speaker that was with . . . [D]efendant in the truck; . . . [D]efendant allowed him to see it; and Detective Porter determined that it was consistent with the speaker alleged to have been taken in the burglary.
>
> . . . .
>
> The questioning and search conducted by Detective Porter, which were consensual, related to the newly formed suspicion, itself supported [by] articulated facts, that . . . [D]efendant and his truck were involved in the automobile burglary in the Walmart parking lot.
>
> . . . .
>
> With the consent of . . . [D]efendant, . . . Detective Porter examined . . . [D]efendant's speaker.

The district court concluded that Officer Benavidez articulated reasonable suspicion for expanding the traffic stop into an auto burglary investigation and that "[t]he

7

actions of Detective Porter at the investigatory portion of the traffic stop of asking and receiving permission to view and then photographing the stereo speaker . . . were constitutionally permissible."

**D.    Issues on Appeal**

{9}    Defendant raises three primary issues on appeal: first, whether Officer Benavidez had a sufficient factual basis to justify expanding the scope of the traffic stop for defective equipment to include an auto burglary investigation; second, whether the duration of the extended investigation was reasonable; and third, whether the evidence was sufficient to establish that Defendant knowingly and voluntarily consented to Detective Porter's search of Defendant's truck.

**DISCUSSION**

**A.    General Standard of Review**

{10}    In a motion to suppress, defendants generally "have the burden to raise an issue as to their illegal search and seizure claims." *State v. Baldonado*, 1992-NMCA-140, ¶ 19, 115 N.M. 106, 847 P.2d 751. Once a defendant has met this burden, "the burden shifts to the state to justify the warrantless search." *Id.* Review of a motion to suppress involves mixed questions of law and fact. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. Although "[w]e view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial

8

evidence exists to support those findings[,]" we review the application of the law to those facts de novo. *Id.*

**B.    Expanding the Scope of the Traffic Stop**

{11}    In reviewing a claim of an impermissible expansion of a traffic stop, this Court conducts a de novo review to determine whether the scope of the additional intrusion and inquiry outside of the original traffic offense was justified by reasonable suspicion. *See State v. Leyva*, 2011-NMSC-009, ¶ 55, 149 N.M. 435, 250 P.3d 861; *State v. Duarte*, 2007-NMCA-012, ¶ 31, 140 N.M. 930, 149 P.3d 1027. "[O]ur reasonable suspicion determination requires us to assess the totality of the circumstances and precludes a divide-and-conquer analysis in which we view each individual factor or circumstance in a vacuum." *State v. Neal*, 2007-NMSC-043, ¶ 28, 142 N.M. 176, 164 P.3d 57 (alteration, omission, internal quotation marks, and citation omitted). "Police officers possess reasonable suspicion when they are aware of specific articulable facts that, judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Urioste*, 2002-NMSC-023, ¶ 6 (internal quotation marks and citation omitted). "[R]easonable suspicion can arise out of the evolving circumstances surrounding a traffic stop and may be based upon reasonable inferences drawn from those circumstances." *State v. Funderburg*, 2008-NMSC-026, ¶ 24, 144 N.M. 37, 183 P.3d 922.

**{12}** Here, the district court's conclusion that "Officer Benavidez had become aware of specific, articulable facts that, judged objectively, would lead a reasonable person to suspect that . . . [D]efendant had been involved in a burglary at the Walmart parking lot" was based on its findings that (1) the officer "received a briefing at the police station to be on the lookout for a vehicle and driver in connection with" the auto burglary; (2) "[a] picture of the truck driven by the suspect was posted at police headquarters, and Officer Benavidez had seen it before he stopped . . . [D]efendant"; and (3) "Officer Benavidez formed a suspicion that . . . [D]efendant and the truck driven by him were associated with the burglary" based on the officer's "articulated details" of the truck and the description of the burglary suspect, including "the make, model, color, and length of the bed of the truck, the style of its tires, and the build, height, and ethnicity of . . . [D]efendant."

**{13}** These findings are supported by substantial evidence in the record. Officer Benavidez testified that he saw the photos of the truck and a "body shot" of the suspect posted at the police department "every day" that he reported for duty after the auto burglary occurred. He also testified that, during the traffic stop, he believed that Defendant and his truck "matched" the suspect and truck depicted in the photos posted at the police department, because the truck was an "older model, white pickup, short bed, had rims on it—not factory rims—had chrome rims, some bigger rims." And he

10

testified that Defendant "matched" the suspect posted in the photos because they were both "about 5'5", . . . heavyset, . . . and . . . Hispanic." The officer also emphasized that Defendant was wearing "a similar type of shirt" as the suspect in the photos. We conclude that the details about Defendant's ethnicity and short, heavyset build, combined with those of the white, short bed, older model pickup truck with large, non-factory chrome rims were sufficiently unique to lead a reasonable person to believe that Defendant and his truck may have been the same suspect and truck depicted in the photos posted at the police department. *See Urioste*, 2002-NMSC-023, ¶ 6; *Neal*, 2007-NMSC-043, ¶ 28 (recognizing that "our reasonable suspicion determination requires us to assess the totality of the circumstances and precludes a divide-and-conquer analysis in which we view each individual factor or circumstance in a vacuum." (alteration, omission, internal quotation marks, and citation omitted)). Therefore, the district court correctly determined that Officer Benavidez had articulable, reasonable suspicion for expanding the traffic stop into an auto burglary investigation.

**C.   Duration**

{14}    As to whether the duration of the expanded investigation was reasonable, we need not reach this issue because Defendant did not preserve it and he does not contend that any exceptions to the rule precluding us from addressing unpreserved

11

arguments apply in this case. *See* Rule 12-216 NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked. . . . This rule shall not preclude the appellate court from considering jurisdictional questions or, in its discretion, questions involving: (1) general public interest; or (2) fundamental error or fundamental rights of a party."). When the district court raised the duration issue sua sponte at the hearing, defense counsel stated, "I don't think that time is so much an issue," and instead asserted that Defendant should have been released, "whether it's one second or ten minutes," after resolution of the traffic offense, "absent some . . . new set of facts that developed that cause[d the officer] to want to keep him there longer." The district court then asked, "All right, so then I should focus on whether he had valid reasonable suspicion?" Defense counsel replied, "Yes, Your Honor." Therefore, because Defendant represented to the district court that the duration of the investigation was not an issue in this case, that issue was not preserved, and we do not address it on appeal. *See* Rule 12-216(A).

**D.     Consent to Search**

{15}     "The voluntariness of consent is a factual question in which the trial court must weigh the evidence and decide if it is sufficient to clearly and convincingly establish that the consent was voluntary." *State v. Davis*, 2013-NMSC-028, ¶ 10, 304 P.3d 10 (internal quotation marks and citation omitted). We must determine "whether the trial

court's decision is supported by substantial evidence, not whether the trial court could have reached a different conclusion[,]" and we review the court's "application of the law to the facts de novo." *Id.* (alteration, internal quotation marks, and citation omitted). "Courts utilize a three-tiered analysis when determining voluntariness: (1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress or coercion; and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights." *Id.* ¶ 14. (internal quotation marks and citation omitted). Specific and unequivocal consent can be established in a variety of ways, including a defendant's "affirmative and direct oral response to an officer's request to search[,] . . . the clarity of a question and response[,] . . . the clarity of the officer's request, followed by the defendant's subsequent compliance[,]" or "[a] response without hesitation[.]" *Id.* ¶ 16.

{16}  As an initial matter, we decline the State's invitation to affirm based on its assertion made for the first time on appeal that there was no "search" because the detective merely observed the speaker in plain view by peering into the window of Defendant's truck. We recognize that "[g]enerally, an appellee has no duty to preserve issues for review and may advance any ground for affirmance on appeal" and that we may affirm the district court's order on such ground even though the order did not rely

upon it. *Cordova v. World Fin. Corp.*, 2009-NMSC-021, ¶ 18, 146 N.M. 256, 208 P.3d 901 (internal quotation marks and citation omitted); *See State v. Todisco*, 2000-NMCA-064, ¶ 11, 129 N.M. 310, 6 P.3d 1032. However, we may do so only "so long as the circumstances do not make it unfair to the appellant to affirm." *Cordova*, 2009-NMSC-021, ¶ 18. Here, Defendant's motion asserted that the detective's inspection of the speaker was the result of a "search" and the district court's order referred to it as a "search[.]" The State did not assert in the district court that the Detective's inspection of the speaker was not a search or that the speaker was in plain view. This failure to raise such a fact-based issue in the district court where Defendant and the court have an opportunity to properly address it is problematic. *See Todisco*, 2000-NMCA-064, ¶ 11 (noting the unfairness of affirming on a fact-dependent ground that was never raised in the district court). Under these circumstances, we conclude that it would be unfair to Defendant to affirm on the ground that no search actually occurred because Defendant did not have an opportunity to respond to this argument below.

{17} Defendant's motion asserted that the officer's conclusory statement that he received Defendant's consent to search was not, by itself, "clear and positive testimony that consent was unequivocal and specific." This assertion was sufficient to "raise an issue" as to the legality of the search and it shifted the burden to the State

14

to justify the search. *Baldonado*, 1992-NMCA-140, ¶ 19; *see State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95 (stating that warrantless searches and seizures "are presumed to be unreasonable and the State bears the burden of proving reasonableness." (internal quotation marks and citation omitted)). At the suppression hearing, however, the State did not present any evidence concerning the circumstances under which Defendant "allowed" Detective Porter to inspect the speaker inside of Defendant's truck. Detective Porter was not present to testify about the dialogue that took place between him and Defendant, and Officer Benavidez's testimony shed no light on these circumstances. At the district court level, the State did not respond at all to Defendant's claim concerning the lack of voluntary consent. Thus, the State did not meet its burden to justify its warrantless search with "clear and positive testimony that the consent was specific and unequivocal[.]" *Davis*, 2013-NMSC-028, ¶ 14 (internal quotation marks and citation omitted); *See Baldonado*, 1992-NMCA-140, ¶ 19.

{18}     We note that the district court found in its order that the detective had "asked to see a stereo speaker that was with . . . [D]efendant in the truck" before "[D]efendant allowed him to see it[.]" However, the only evidence that supports this finding is merely Detective Porter's written statement that Defendant "allowed" him to see the speaker. The question is whether this statement permitted the district court to infer that

the detective had first asked to see the speaker and that Defendant unequivocally consented. We conclude that it does not. This sparse, conclusory statement is not "clear and positive testimony" that, "in light of the presumption that disfavors the waiver of constitutional rights[,]" proves "clearly and convincingly" that Defendant consented to the intrusion. *Davis*, 2013-NMSC-028, ¶¶ 10, 14. Concluding otherwise would encourage the state to remain vague and present as little evidence as possible in meeting its burden to show consent, as it did in this case, which is inconsistent with the requirement that the State prove "clearly and convincingly" that consent was "specific and unequivocal[.]" *Id.*; *see Black's Law Dictionary* 1616, 1760 (10th ed. 2014) (defining "specific" in pertinent part as "explicit" and defining "unequivocal" as "[u]nambiguous; clear; free from uncertainty").

**CONCLUSION**

{19}     We remand this case to the district court to allow Defendant the opportunity to withdraw his plea and for the district court to determine whether the evidence to be suppressed includes the statements that Defendant made during and after the search, as well as any evidence concerning the speaker inspected and photographed during the search.

16

{20}    **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**LINDA M. VANZI, Judge**